GREEN, J.
delivered the opinion of the court.
This is a bill to set aside an agreement for the sale of a lot of land in Nashville, conveyed by complainant to .defendant, on the ground that the defendant, imposed upon the complainant, and obtained the deed for her lot by fraud.
In considering the testimony in this cause, it is important to take into view the condition and character of the parties. Not the moral character, but the mental, physical and pecuniary condition of the parties; for fraud *76 “may be presumed from the circumstances and condition of the parties contracting. Wliat were these circumstances? The defendant was an ar.tful, intelligent, keen, speculating man, and was a close trader. The complainant was a negro woman, ignorant, old, addicted to drunkenness, then in bad health, and necessarily imbecile, and possessing no other property than the lot in question. The contract was made in secret. The defendant did not cause the terms of the contract to be stated by the complainant to any person. He did not even himself state the terms in her presence to any one. She had then no other means of knowing what was in the writings but as she might gather that information from hearing the papers read. An intention to act fairly would have prompted the defendant to have had respectable persons present, in whose hearing the contract would have been plainly and minutely stated, so that it might be apparent complainant understood what she was doing. But this was not donev Perfect silence, as to the terms of the contract, is preserved whenever the parties are in the presence of third persons. The writings are drawn by the defendant’s son-in-law, in his own house, under his own directions and instructions, in the absence of complainant, who is then sent for, and without any thing being, said to her about the terms of the contract, the papers are-read, and she is called on to execute the deed. It is not probable that she could have understood the import either of the deed or the bond; nay, it is almost certain that if the bond was not in accordance with her understanding; of the contract, she could not have detected the imposition. Many white persons more- enlightened than this complainant, are unable to comprehend the import of technical instruments by hearing them read only. It would betray an entire want of knowledge of the human character, were we to assume that this ignorant, imbecile woman, understood what she was doing,'thus hastily called on, confiding doubtless in the white men around her, *77 without any explanation in plain language which she could comprehend, and only hearing the papers read.
We will next consider the character of this contract; for fraud “may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses and not under delusion would make on the one hand, and such as no honest and fair man would accept on the other.” Look at the nature and subject of this bargain. This old free black woman had a lot worth about four hundred dollars. Her husband was a slave belonging to the defendant, and worth about the same sum. Several of her neighbors had heard her say that she wanted to sell her lot for Edmund her husband. Whenever she spoke of selling her lot, the object was to get Edmund. She was, as the witness says, “wrapt up” in him. Her anxiety to get him was natural. Although they had on a former occasion disagreed, that had passed away, harmony was restored, and he was then sick at her house. Even the son-in-law of defendant says he heard her offer the lot to defendant for Edmund. She could have sold the lot for four hundred dollars in money, and the defendant was willing to sell Edmund, who was not worth more. If the defendant traded for the lot at all, it would be natural for him to give Edmund. But after all this conversation, all this natural anxiety to get Edmund, we find this old destitute negro woman giving her lot, her home and her only property, for a heavy wagon and less than half a team of inferior horses. No person had ever heard her speak of desiring to get a wagon and team. She could plainly have no use for them, but they would be an expense and encumbrance. The folly of making-such a contract is apparent. No' woman in her circumstances, if in her senses and not under delusion, would make it; and it may be confidently asserted that no honest and fair man would have accepted it.
When it is considered that the complainant desired greatly to trade for her husband; had never spoke of tra- *78 dine; the lot for any other obiect: that she had refused to take for it four hundred dollars m money; that she was a negro, old, ignorant and imbecile; that she had never been heard to speak of trading for a wagon; that she had no means to purchase other horses for the wagon; that she could have no use for it, but on the contrary it must be a heavy expense and burden; that the contract was kept secret, never having been stated between them in the presence of witnesses; that the writings were drawn by a member of defendant’s family, at his house, and under his direction alone, it is difficult to perceive how it is possible for the mind to resist the conclusion that the defendant was guilty of a most gross fraud. To resist these circumstances, the evidence of Hodges is relied on. He read the papers to her, and she admitted when asked that they were right. She was present at the valuation of the property, and chose one of the valuers; spoke of running the wagon to pay her debts, and appeared satisfied with the trade.
What occurred when the papers were executed, has already been noticed. Her choosing valuers and attending to the appraisement of the property, does not prove any thing; for the trade having been made,, and she having been put out of her house, she might have considered herself bound by it. The deposition of Hodges, too, is in several particulars in conflict with defendant’s answer. His agency in the matter, his connexion with defendant, and the character of his swearing, entitle his deposition to but little weight. 2 Ves. sr. 154: 2 P. Williams, Clarkson vs. Hanby.
The court is unanimously of opinion, that the decree be reversed, and that the contract be set aside, and the complainant be restored to her original rights.
Decree- reversed.