563 F.2d 105
 Linda Sue EDWARDS, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE OF HARTFORD, CONNECTICUT, Defendant-Appellant.
P. V. JACKSON, III, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE OF HARTFORD, CONNECTICUT, Defendant-Appellant.
P. V. JACKSON, III, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE OF HARTFORD, CONNECTICUT, Defendant-Appellee.
 Nos. 76-1382, 76-1383 and 76-1504.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 6, 1977.
Decided Oct. 10, 1977.
 
 Douglas Fisher, Howell & Fisher, Nashville, Tenn., for defendants-appellants in Nos. 76-1382 and 76-1383 and defendant-appellee in No. 76-1504.
 Joseph L. Lackey, Jr., Lackey, Alexander & Jackson, Nashville, Tenn., for plaintiffs-appellees in Nos. 76-1382 and 76-1383 and plaintiff-appellant in No. 76-1504.
 Before PECK and LIVELY, Circuit Judges, and GUY,* District Judge.
 JOHN W. PECK, Circuit Judge.
 
 
 1
 Plaintiff P. V. Jackson, III, an attorney licensed to practice in the State of Tennessee, brought suit against defendant Travelers Insurance Company of Hartford, Connecticut (Travelers), alleging that he was employed by plaintiff-appellee Linda Sue Edwards, who had been injured in an automobile accident, and charging that defendant Travelers had induced the breach of this contract to his damage. Plaintiff Edwards also brought suit, alleging that Travelers, through its agents, was guilty of fraud, misrepresentation, and deceit in the procuring of a settlement entered into by her and defendant Travelers.
 
 
 2
 The district court held that both plaintiffs in this consolidated diversity suit[1] were entitled to receive damages from Travelers. Jackson v. Travelers Ins. Co. of Hartford, Conn., 403 F.Supp. 986 (M.D.Tenn.1975). The district court awarded damages to Edwards in the amount of $284,974.35, but then gave Travelers a credit in the amount of $34,974.35, to leave a net award of $250,000. The district court awarded $1,000 damages to plaintiff Jackson. Travelers has appealed. Jackson also appealed, seeking a larger award of damages.
 
 
 3
 We affirm the portion of the district court's judgment awarding $1,000 damages to plaintiff Jackson. We modify the portion of that judgment awarding damages to plaintiff-appellee Edwards to strike the credit given to defendant Travelers for $34,974.35, so as to give plaintiff Edwards the full award of $284,974.35. We affirm the judgment as so modified.
 
 
 4
 * Senior United States District Judge Daniel H. Thomas, before whom this case was tried, made detailed findings of fact which appear in Jackson v. Travelers Ins. Co., supra, 403 F.Supp. at 995-998. Virtually all of the recitals of fact which appear hereinafter will find authentication in Judge Thomas's findings, which we hold to be supported by substantial evidence and not to be clearly erroneous, and to the limited extent that our statements may not be so authenticated, they have been taken directly from the transcript of trial in the record.
 
 
 5
 Preliminarily, suffice it to say that plaintiff Edwards, then a young and attractive woman, was injured in an automobile accident, in January, 1972, under circumstances which caused appellant Travelers to, in effect, concede liability under a $50,000 policy issued by it covering the car in which she was a passenger. Her injuries included brain-stem damage, a paralysis of her left arm and leg, and eye damage requiring corrective surgery. She is permanently disabled and unable to resume her former employment as a secretary. She employed plaintiff Jackson as her attorney, and he advised Travelers of such representation. Travelers responded that until Mrs. Edwards was divorced or had a legal guardian, it would not recognize Jackson as her attorney. Based upon the false representation that she could not have an attorney and have her bills paid on an "advance pay system," Mrs. Edwards, in March, 1972, signed a statement written by a Travelers' agent to the effect that she was not represented by counsel. Jackson was thereby led to believe that he had been discharged and did not participate in any way in the settlement which followed. That settlement, made in August, 1972, was for $25,000 plus special damages already paid for before the settlement for a total amount of $34,974.35. The settlement was preceded by representations by a Travelers' agent to the effect that the carrier could go no higher and that all medical expenses had been paid, neither of which was in fact a true statement.
 
 
 6
 As hereinabove indicated, plaintiffs Edwards and Jackson thereupon brought this action, in June, 1974, to recover damages for fraud in the procurement of the settlement and for improper interference with the attorney-client relationship.
 
 II
 
 7
 Defendant Travelers makes three basic arguments against the award of damages to plaintiff Edwards. Travelers contends that it did not commit fraud, misrepresentation, and deceit in procuring the settlement with plaintiff Edwards. Defendant Travelers contends that the one year Tennessee statute of limitations, T.C.A. § 28-304, barred any claim plaintiff Edwards had. Travelers contends that the award of damages to plaintiff Edwards was not proper. We are not persuaded by any of these arguments.
 
 
 8
 The district court's determination that defendant Travelers was guilty of fraud, misrepresentation, and deceit is supported by the record and applicable law. The six elements of the tort of fraud, misrepresentation, and deceit were satisfied in the present case by evidence of the false representations made by defendant Travelers to plaintiff Edwards initially when defendant Travelers stripped her of counsel in March, 1972, and then when a settlement was reached in August, 1972, after direct negotiations with plaintiff Edwards.
 
 
 9
 First, there must be a representation of an existing or past fact and not an opinion or a conjecture as to future events. A. Landreth Co. v. Schevenel, 102 Tenn. 486, 52 S.W. 148 (1899); Haynes v. Cumberland Builders, Inc., 546 S.W.2d 228, 232 (Tenn.App.1976), cert. denied, (1977); Dozier v. Hawthorne Development Co., 37 Tenn.App. 279, 262 S.W.2d 705, 710, cert. denied, (1953); Georgia Marble Co. v. Standard Tile Co., 19 Tenn.App. 258, 86 S.W.2d 429, 432, cert. denied, (1935); Silvers v. TTC Industries, Inc., 484 F.2d 194, 198 (6th Cir. 1973); Butts v. Colonial Refrigerated Transportation, Inc., 290 F.2d 221, 222 (6th Cir. 1961); Cumberland Portland Cement Co. v. Reconstruction Finance Corp., 140 F.Supp. 739, 751 (E.D.Tenn.1953), aff'd 232 F.2d 930 (6th Cir. 1956). The representations made by Travelers through its claim representative Ray Davidson were ones of present fact. In March, 1972, Davidson told plaintiff Edwards that her bills could not be paid on the advance pay system if she retained an attorney. In August, 1972, Davidson told plaintiff Edwards that all her bills had been paid by Travelers and that $25,000 above what already had been paid was all she could receive from Travelers. These statements were not opinions or conjectures as to future events.
 
 
 10
 Second, the representation must be false. Tartera v. Palumbo, 224 Tenn. 262, 266-67, 453 S.W.2d 780, 782 (1970); Shwab v. Walters, 147 Tenn. 638, 643-44, 251 S.W. 42, 44 (Tenn.1922); Bevins v. Livesay, 32 Tenn.App. 1, 221 S.W.2d 106, 109, cert. denied, (1949); Butts v. Colonial Refrigerated Transportation, Inc., supra, 290 F.2d at 222. The district court found that the representations made to plaintiff Edwards in March, 1972, and August, 1972, by Travelers, through Davidson, were false. In March, 1972, it was not a requirement of the advance pay system that an injured claimant not have an attorney. In August, 1972, plaintiff Edwards' bills had not all been paid by defendant Travelers, and the insurance policy limit available to plaintiff Edwards was $50,000.
 
 
 11
 Third, the representation must be in regard to a material fact. Haynes v. Cumberland Builders, Inc., supra, 546 S.W.2d at 232; Dozier v. Hawthorne Development Co., supra, 37 Tenn.App. 279, 262 S.W.2d at 710; Bevins v. Livesay, supra, 32 Tenn.App. 1, 221 S.W.2d at 109; Crigger v. Mutual Ben. Health & Accident Ass'n, 17 Tenn.App. 636, 69 S.W.2d 907 (1933), cert. denied, (1934). Clearly, the false representations in the present case were material. Plaintiff Edwards would not have agreed to settle had she known that not all her bills had been paid and that more than $25,000 was available to her. The March, 1972, statement to plaintiff Edwards that she could not have her bills paid if she retained an attorney was the inducement to plaintiff Edwards to acquiesce in the release of her attorney (plaintiff Jackson), and without an attorney for plaintiff Edwards involved in the case, Travelers could deal directly with plaintiff Edwards to reach the August, 1972, agreement.
 
 
 12
 Fourth, "there must be proof of fraud," and "fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false." Tartera v. Palumbo, supra, 224 Tenn. at 266-67, 453 S.W.2d at 782; Jasper Aviation, Inc. v. McCollum Aviation, Inc., 497 S.W.2d 240, 243 (Tenn.1972); Shwab v. Walters, supra, 147 Tenn. at 644, 251 S.W.2d at 44; Crouch v. Gray, 154 Tenn. 521, 290 S.W. 391 (1926); Derry v. Peek, 14 App.Cas. 337, 58 L.J.Ch. 864 (1889); Haynes v. Cumberland Builders, Inc., supra, 546 S.W.2d at 232; Butts v. Colonial Refrigerated Transportation, Inc., supra, 290 F.2d at 222; Cumberland Portland Cement Co. v. Reconstruction Finance Corp., supra, 140 F.Supp. at 751. The district court recognized this scienter element of the Tennessee law of fraud, misrepresentation, and deceit in arriving at its conclusion that the plaintiffs had proven that Travelers was guilty of fraud, misrepresentation, and deceit. Travelers complains, however, that there was no proof to show intent. We do not agree.
 
 
 13
 Certainly there was not in evidence a Travelers interoffice memorandum stating that the claim representative, in seeking a settlement with plaintiff Edwards, should deceive her; but such direct evidence need not be adduced to support a case of fraud. Jones v. Seal, 56 Tenn.App. 593, 409 S.W.2d 382, 385, cert. denied, (1966). Tennessee courts have recognized that fraud by its nature is often difficult to prove and thus may be properly proved by wholly circumstantial evidence. Parrott v. Parrott, 48 Tenn. 681, 687 (1870); Floyd v. Goodwin, 16 Tenn. 484 (1835); George Busby Ford, Inc. v. Ross, 62 Tenn.App. 80, 459 S.W.2d 46, 49, cert. denied, (1970); Jones v. Seal, supra, 56 Tenn.App. 593, 409 S.W.2d 382. See Trice v. Commercial Union Assurance Company, 397 F.2d 889, 891 (6th Cir. 1968), cert. denied393 U.S. 1018, 89 S.Ct. 623, 21 L.Ed.2d 563 (1969).
 
 
 14
 From the evidence received in the case, the district court could conclude that in March, 1972, the defendant Travelers' claim representative Davidson was fully aware that there was no company policy requiring an injured claimant not to have an attorney in order to be put on the advance pay system, but he nevertheless told plaintiff Edwards that she could not have an attorney and have her bills paid by Travelers in order to induce plaintiff Edwards to release her attorney. The district court could conclude that in August, 1972, that defendant Travelers was on notice that not all the bills of plaintiff Edwards had been paid.[2] Consequently, the district court could conclude that when Davidson told plaintiff Edwards that defendant Travelers had paid all her bills, he did so without belief that his representation was true or did so recklessly, careless as to whether his representation was true or false. The district court could easily conclude that when Travelers, through Davidson, told plaintiff Edwards that $25,000 above what already had been paid was all she could receive from Travelers in a settlement, Davidson was fully aware that the representation was false and that plaintiff Edwards could get more money in a settlement because the Nashville Claim Department had been given a $50,000 settlement authority for the case.[3] Finally, the district court could conclude that Travelers, through Davidson, told plaintiff Edwards that her bills had been paid and $25,000 was all she could receive in order to induce her to settle.
 
 
 15
 Fifth, the plaintiff must rely reasonably on the misrepresented material fact. Haynes v. Cumberland Builders, Inc., supra, 546 S.W.2d at 232; Dozier v. Hawthorne Development Co., supra, 37 Tenn.App. 279, 262 S.W.2d at 710; Bevins v. Livesay, supra, 32 Tenn.App. 1, 221 S.W.2d at 109; Butts v. Colonial Refrigerated Transportation, Inc., supra, 290 F.2d at 222. The issue is whether plaintiff Edwards can be charged with knowledge of facts apprising her that the representations of Travelers were false, not whether plaintiff Edwards was negligent in accepting the representations because contributory negligence is not a defense to an intentional tort such as fraud, misrepresentation, and deceit. Bevins v. Livesay, supra, 32 Tenn.App. 1, 221 S.W.2d at 109; Prosser, The Law of Torts (4th Ed.) 716-17. Plaintiff Edwards had no way of knowing that she could have had an attorney and still be put on the advance pay system by defendant Travelers, that not all her bills had been paid, and that she could have received up to $50,000 from defendant Travelers. She had no duty to investigate in the present case, Bevins v. Livesay, supra, 32 Tenn.App. 1, 221 S.W.2d at 109, and especially since her badly injured condition diminished her ability to ascertain the truth.[4]
 
 
 16
 Sixth, the plaintiff must suffer damage. Whitson v. Gray, 40 Tenn. 441, 444 (1859); Cunningham v. Edgefield and Kentucky R.R. Co., 39 Tenn. 23, 29 (1859); Haynes v. Cumberland Builders, Inc., supra, 546 S.W.2d at 232; Croft v. Gentry, 33 Tenn.App. 595, 232 S.W.2d 424, 426, cert. denied, (1949); Prosser, supra, 686, 731. Defendant Travelers argues that plaintiff Edwards was not damaged by the fraud perpetrated upon her. The premise of defendant Travelers' argument is that plaintiff Edwards' prospect of any recovery was obviously limited to the $50,000 insurance coverage, from which defendant Travelers reasons that the $34,974.35 plaintiff Edwards received by settlement was more than what she would have received if she had obtained the $50,000 through an attorney since the attorney's fee with plaintiff Jackson would have been one-third. We reject this argument.
 
 
 17
 Plaintiff Edwards' pretrial recovery was not obviously limited to the $50,000 insurance coverage. The district court determined that on the night of the accident, the driver of the car (Cooper) had the permission and consent of the owner of the car (Rutherford) to use the automobile. Defendant Travelers also recognized that Cooper had the use of the Rutherford car for business and pleasure. While in the process of evaluating the Edwards claim, James Luther, defendant Travelers' supervisor of the Nashville Claims Department, told Edward Jenkins, the manager of that Claims Department, in an interoffice memorandum, dated July 21, 1972, that:
 
 
 18
 When this accident happened, Linda Edwards was riding in an automobile that was owned by Richard Rutherford and was given to William Cooper to drive on company business and also to use as his personal automobile.
 
 
 19
 In the interoffice memorandums written that summer of 1972 and in the settlement report, there is no question but that Travelers considered plaintiff Edwards' claim a case of clear liability and one worth quite a lot of money. Furthermore, although Cooper's assets were limited, Rutherford had substantial net worth.
 
 
 20
 While defendant Travelers now belittles the prospects that plaintiff Edwards had in recovering against Cooper and Rutherford, it is clear that her right to proceed in court against Cooper and Rutherford with more than simply a colorable claim was a valuable right and that she was damaged by its loss in the settlement brought about by the fraud of defendant Travelers. Plaintiff Jackson, as the attorney for plaintiff Edwards, intended to bring suit against Cooper and Rutherford. Even after being discharged, plaintiff Jackson, who did not then know about the settlement, attempted to communicate to plaintiff Edwards that her right to institute suit against Cooper and Rutherford would expire one year after the accident due to the running of the statute of limitations.
 
 
 21
 Furthermore, once plaintiff Edwards was without counsel, the false representations made to her by defendant Travelers resulted in her losing the difference between $34,974.35 and $50,000. Plaintiff Edwards would have recovered at least the $50,000 from defendant Travelers in a settlement not tainted by fraud and plaintiff Edwards would have been able to keep the entire amount without subtracting an attorney's fee. Travelers cannot seek to excuse and thereby to benefit from the fraud it committed in August, 1972, in procuring the settlement with plaintiff Edwards by its fraud committed in March, 1972, in stripping plaintiff Edwards of counsel.[5]
 
 
 22
 Hence, Travelers was guilty of fraud, misrepresentation, and deceit by the false representations of material fact upon which plaintiff Edwards relied to her damage. Even absent such false representations, defendant Travelers still would have been guilty of fraud, misrepresentation, and deceit by the constructive fraud practiced on plaintiff Edwards.
 
 
 23
 A definition of constructive fraud was given in Maxwell v. Land Developers, Inc., 485 S.W.2d 869, 875 (Tenn.App.), cert. denied, (1972).
 
 
 24
 "Constructive frauds are acts, statements or omissions, which operate as virtual frauds on individuals, or which, if generally permitted, would be prejudicial to the public welfare, and are not clearly resolvable into mere accident or mistake, and yet may have been unconnected with any selfish evil design, or may amount, in the opinion of the person chargeable therewith, to nothing more than what is justifiable or allowable." Gibson's Suits in Chancery 5th Ed., Vol. II, § 982, p. 217. Constructive fraud may be established where there is a breach of legal or equitable duty, whether or not fraudulent intent be present. Bank of Blount County v. Dunn (1929) 10 Tenn.App. 95.
 
 
 25
 Failure to disclose thus becomes fraudulent when it is the duty of a party having the knowledge to reveal the facts to the other party.[6] Domestic Serving Machine v. Jackson, 83 Tenn. 418, 424-25 (1885); Dozier v. Hawthorne Development Co., supra, 37 Tenn.App. 279, 262 S.W.2d 705; Georgia Marble Co. v. Standard Tile Co., supra, 19 Tenn.App. 258, 86 S.W.2d at 432.
 
 
 26
 When defendant Travelers induced the breach of contract between plaintiff Edwards and her attorney (plaintiff Jackson),[7] Travelers established a confidential relationship with plaintiff Edwards in which Travelers had the duty to disclose all material facts to her when attempting to obtain a settlement in August, 1972. Turner v. Leathers, 191 Tenn. 292, 232 S.W.2d 269 (1950); Bayliss v. Williams, 46 Tenn. 440 (1869); Iacometti v. Frassinelli, 494 S.W.2d 496 (Tenn.App.), cert. denied, (1973); Cultra v. Douglas, 60 Tenn.App. 116, 444 S.W.2d 575, cert. denied, (1969); Bell v. Gailey, 37 Tenn.App. 17, 260 S.W.2d 300, cert. denied, (1951); Roberts v. Chase, 25 Tenn.App. 636, 166 S.W.2d 641, cert. denied, (1942); Miller v. Proctor, 24 Tenn.App. 439, 145 S.W.2d 807, cert. denied, (1940). Under Tennessee law, a confidential relationship is one in which "confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party . . . ." Iacometti v. Frassinelli, supra, 494 S.W.2d at 499.
 
 
 27
 Plaintiff Edwards was a severely injured claimant, suffering physically and emotionally. Requiring the advice of counsel, she accepted the offer of the services of plaintiff Jackson. Travelers, however, required plaintiff Edwards not to have counsel to obtain the benefits of the advance pay system. Travelers then had a practical dominion over plaintiff Edwards, who was led to trust Travelers. Plaintiff Edwards in fact did place trust in Davidson, the claim representative for Travelers, saying that it was "as though he was the boy next door." The nurse, Mrs. Norris, testified that Davidson was one of the "nicest persons" to plaintiff Edwards. In addition, Travelers demonstrated that it was not unaware of its responsibilities to plaintiff Edwards. The procedure by which $10,000 of the $25,000 settlement was initially placed in escrow was devised by defendant Travelers to protect the interests of plaintiff Edwards.
 
 
 28
 Although Travelers believed that when it attempted to settle with plaintiff Edwards in August, 1972, the relationship was adversary in character and thus it did not have a duty to disclose any facts to plaintiff Edwards, it would be fatuous to suggest that there could be an adversary relationship between an insurance company and an injured claimant such as plaintiff Edwards after the insurance company, by fraudulently applied economic leverage over the claimant, gets rid of the claimant's counsel. The Tennessee law of confidential relationships does not sanction such a proposition. See Bell v. Gailey, supra, 37 Tenn.App. 17, 260 S.W.2d at 303. The cases in which Travelers seeks support, Walsh v. Campbell, 130 Ga.App. 194, 202 S.E.2d 657 (1973), Stockett v. Penn. Mut. Life Ins. Co., 82 R.I. 172, 106 A.2d 741 (1954), Moses v. Manufacturers Life Ins. Co., 298 F.Supp. 321 (D.S.C. 1968), are not Tennessee cases and do not deal with the situation in the present case of an insurance company first stripping an injured claimant of counsel by fraudulent means and then proceeding to settle with the claimant.
 
 
 29
 Thus, when Davidson, the claim representative for Travelers, testified at trial that, when seeking to obtain a settlement with plaintiff Edwards in August, 1972, he did not disclose to her that there was a $50,000 policy limit and that she had the right to proceed against Cooper and Rutherford in court for an amount in excess of the policy limits, he was testifying to facts which showed that Travelers had committed constructive fraud. The concealed facts would have been material to plaintiff Edwards.
 
 
 30
 This holding is in harmony with Tennessee law favoring settlements. Settlements are favored under Tennessee law because the parties have amicably resolved a dispute without resort to litigation. See Emmco Insurance Company v. Beacon Mutual Indemnity, 204 Tenn. 540, 322 S.W.2d 226 (1959). Fraudulently obtained settlements, however, are obviously not favored, and the Tennessee law of confidential relationships recognizes that there are occasions in which the relative positions of the parties are so unequal that a transaction between them carries a higher risk of fraud. Turner v. Leathers, supra, 191 Tenn. 292, 232 S.W.2d 269; Iacometti v. Frassinelli, supra, 494 S.W.2d 496; Bell v. Gailey, supra, 37 Tenn.App. 17, 260 S.W.2d 300.
 
 
 31
 This holding is also in harmony with Lee v. Drabkin, 197 Tenn. 376, 273 S.W.2d 473 (1954). There the injured claimant, Mrs. Lee, accepted a settlement, which the claimant later attacked as fraudulently obtained because the insurance agent had discussed the claim and arranged a tentative settlement with her when the agent knew that she was in pain from the accident. The settlement was presented in court and entered as a judgment after Mrs. Lee was asked by the court if she was satisfied with the proposed judgment, to which she replied in the affirmative. The Tennessee Supreme Court held:
 
 
 32
 It thus conclusively appears that before Mrs. Lee requested the Court to approve this judgment she was fully acquainted with all the matters alleged as grounds for a new trial. Nor was there any overreaching of her as to the circumstances, since these matters were told to the Court in her presence. The activity of the insurance agent in talking to her about the claim from time to time during the period that she was grieved and worried and in pain by reason of her broken arm was not an act of fraud upon the part of this agent. She knew what her condition was and, knowing it, she told the Court that she approved this agreement and requested the Court to approve it.
 
 
 33
 197 Tenn. at 381, 273 S.W.2d at 475.
 
 
 34
 Lee v. Drabkin, supra, involved a far different situation from the one in the present case. First, in Lee the acts of the insurance agent relied upon by the injured claimant as constituting fraud were known to the claimant. There could be no justifiable reliance. Moreover, there were no false representations, and there was not a failure to disclose facts. In the present case, there was justifiable reliance by plaintiff Edwards on false representations, and there was a concealment of material facts. Second, the Lee claimant was represented by counsel in court concerning the settlement. In the present case, counsel for plaintiff Edwards was effectively removed from the case by the defendant insurance company. Third, the Lee claimant was asked in court about her satisfaction with the settlement, and there was no overreaching because of the proceedings in court. In the present case, there were no proceedings in court. Fourth, the physical injury in Lee was a broken arm. In the present case, plaintiff Edwards was totally disabled.[8]
 
 
 35
 Travelers, by making false representations and failing to disclose material facts to plaintiff Edwards in procuring the settlement, was guilty of fraud, misrepresentation, and deceit. Travelers contends that still she is not entitled to recover damages from Travelers because the one year Tennessee statute of limitations, T.C.A. § 28-304, operated to bar her fraud claim. That statute states that an action for injuries to the person shall be commenced within one year after the cause of action has accrued. Plaintiff Edwards argues that either the ten year Tennessee statute of limitations, T.C.A. § 28-310, which governs actions not covered in any other statute of limitations, is applicable or, as the district court held, Travelers is equitably estopped from relying on the one year statute of limitations.
 
 
 36
 " The applicable statute of limitations in a particular cause will be determined according to the gravamen of the complaint." Vance v. Schulder, 547 S.W.2d 927, 931 (Tenn.1977); Swauger v. Haury & Smith Contractors, Inc., 512 S.W.2d 261, 262 (Tenn.1974); Carney v. Smith, 222 Tenn. 472, 437 S.W.2d 246 (1969); Brown v. Dunstan, 219 Tenn. 291, 409 S.W.2d 365 (1966). The gravamen of plaintiff Edwards' complaint is fraud in the procuring of a settlement, the common law action of deceit.
 
 
 37
 In Vance v. Schulder, supra, 547 S.W.2d 927, a seller of stock sued in tort, claiming fraud with respect to the inducement of the contract to sell the stock. The Tennessee Supreme Court noted that the gravamen of the complaint in that case was "fraud in the inducement of a contract, the old common law action of deceit," 547 S.W.2d at 931, and held that the three year Tennessee statute of limitations, T.C.A. § 28-305, applied. That statute provides:
 
 
 38
 Actions for injuries to personal or real property, actions for the detention or conversion of personal property, civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability, and actions for alienation of affections, shall be commenced within three (3) years from the accruing of the cause of action.
 
 
 39
 In reaching its result in Vance, the Tennessee Supreme Court accepted a broad definition of "injury" to include "loss" and then reasoned that contemplated within the meaning of the phrase "injuries to personal . . . property" was the deprivation of money from a plaintiff purchaser of stock through fraud and deceit.
 
 
 40
 We hold that the three year Tennessee statute of limitations, T.C.A. § 28-305, was applicable to plaintiff Edwards' claim of fraud, misrepresentation, and deceit. Plaintiff Edwards was deprived of money by accepting an amount in the settlement smaller than she would have had Travelers not engaged in fraud.
 
 
 41
 The three year statute of limitations did not bar plaintiff Edwards' claim. Plaintiff Edwards filed suit in June, 1974, less than three years after the accident and the subsequent events of 1972. We need not consider the precise date when, within the meaning of the statute, the fraud claim accrued. See McCroskey v. Bryant Air Conditioning, 524 S.W.2d 487 (Tenn.1975); Teeters v. Currey, 518 S.W.2d 512 (Tenn.1974); Hall v. DeSaussure, 41 Tenn.App. 572, 297 S.W.2d 81, cert. denied, (1956); Roberts v. Berry, 541 F.2d 607 (6th Cir. 1976).
 
 
 42
 Travelers protests that the award of damages was not proper. It contends that the prerequisites for punitive damages did not exist in the present case and that the award was so large as to be manifestly unjust. We do not agree.
 
 
 43
 There are two prerequisites to an award of punitive damages under Tennessee law. First, "punitive damages may only be awarded in cases involving fraud, malice, gross negligence or oppression, where a wrongful act is done with a bad motive or so recklessly as to imply a disregard for social obligations, or where there is such willful misconduct or entire want of care as to raise a presumption of conscious indifference to consequences." Johnson v. Husky Industries, Inc., 536 F.2d 645, 650 (6th Cir. 1976); Inland Container Corp. v. March, 529 S.W.2d 43, 45 (Tenn.1975). See Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639, 383 S.W.2d 1 (1964); Bryson v. Bramlett, 204 Tenn. 347, 321 S.W.2d 555 (1959); Bland v. Smith, 197 Tenn. 683, 277 S.W.2d 377 (1955); Knoxville Traction Co. v. Lane, 103 Tenn. 376, 53 S.W. 557 (1899); Guilbert v. Phillips Petroleum, 503 F.2d 587 (6th Cir. 1974); Honaker v. Leonard, 325 F.Supp. 212 (E.D.Tenn.1971). Second, there must be actual damages suffered by the plaintiff. Inland Container Corp. v. March, supra, 529 S.W.2d at 44-45; Liberty Mut. Ins. Co. v. Stevenson, 212 Tenn. 178, 368 S.W.2d 760 (1963); Booth v. Kirk, 53 Tenn.App. 139, 381 S.W.2d 312 (1963), cert. denied, (1964); Allen v. Melton, 20 Tenn.App. 387, 99 S.W.2d 219, cert. denied, (1936).
 
 
 44
 Both prerequisites existed in the present case. The fraud committed by defendant Travelers clearly justified an award of punitive damages. It is shocking that a reputable insurance company such as Travelers would engage in deceitful conduct so oppressive and so callous to a badly injured person like plaintiff Edwards. What is worse, Travelers was aware of the possibility that to settle for less than the policy limits could result in a "bad faith judgment." Furthermore, it is certain that the district court intended that there be an award of compensatory damages. While the district court's award of damages does not clearly separate out the compensatory and punitive elements of the award, the district court did give a $34,974.35 credit to defendant Travelers for an amount already paid to plaintiff Edwards as compensation, and that credit was designed to cover the need to designate compensatory damages.
 
 
 45
 The district court, however, acted on a misunderstanding of the law by giving the credit to Travelers. When the present case was before the district court, Travelers argued that plaintiff Edwards had to tend back to Travelers the $34,974.35 already paid before plaintiff Edwards could rescind the settlement. Plaintiff Edwards was not, however, seeking to rescind the settlement so that she could sue on a personal injury tort claim. Her action was based on the very different theory of common law deceit. The Tennessee Supreme Court in Vance v. Schulder, supra, 547 S.W.2d at 931, noted the difference between suing for rescission and bringing an action for deceit:
 
 
 46
 An individual induced by fraud to enter into a contract may elect between two remedies. He may treat the contract as voidable and sue for the equitable remedy of rescission or he may treat the contract as existing and sue for damages at law under the theory of "deceit." The latter is grounded in tort.
 
 
 47
 But instead of recognizing that Travelers was raising an irrelevant argument to the theory of recovery relied upon by plaintiff Edwards, the district court confused the two theories of rescission and deceit in its award of damages.
 
 
 48
 The district court erroneously applied to the present case a Tennessee statute, T.C.A. § 23-3002. That statute provided:
 
 
 49
 Rescission of fraudulent or erroneous settlements. Where a compromise settlement of a claim for damages resulting from personal injuries has been brought about by fraud or mistake, such settlement may be rescinded without return of the consideration to the party released, but such consideration paid shall constitute a credit to apply in satisfaction of any judgment procured on account of such personal injuries.
 
 
 50
 The application of this statute to plaintiff Edwards' case, brought under deceit, was the basis of the credit given to defendant Travelers, but as the statute shows, it applies only if the plaintiff elects to sue for rescission in order to obtain a judgment on the personal injury tort claim.
 
 
 51
 We thus must modify the judgment to strike the credit given to Travelers for $34,974.35. As modified, the award of $284,974.35 to plaintiff Edwards includes an award of compensatory damages. This modification is based on the recognition that the district court intended that there be an award of compensatory damages and that plaintiff Edwards suffered actual damages for which she was entitled to be compensated.[9]
 
 
 52
 We also reject the contention of Travelers that the amount of punitive damages awarded to plaintiff Edwards was excessive and manifestly unjust. Punitive damages "are allowed as punishment of the wrongdoer and are not based so much upon the nature and extent of the injury as they are upon the oppression of the party who does the injury." Johnson v. Husky Industries, Inc., supra, 536 F.2d at 650. See Lazenby v. Universal Underwriters Insurance Co., supra, 214 Tenn. 639, 642, 383 S.W.2d 1, 4; Schwab v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, 482 S.W.2d 143, 149 (Tenn.App.), cert. denied, (1972); International Union v. American Metal Products Company, 56 Tenn.App. 526, 408 S.W.2d 682, 707 (1964), cert. denied, (1965). By awarding punitive damages, the Tennessee law blends the interest of society and the aggrieved individual and gives such damages as will punish the defendant in a way that will deter similar transactions. Telephone & Telegraph Co. v. Shaw, 102 Tenn. 313, 52 S.W. 163 (1899); Louisville, Nashville & Great Southern R.R. Co. v. Guinan, 79 Tenn. 98 (1883); Byram v. McGuire, 40 Tenn. 530 (1859); Booth v. Kirk,supra, 53 Tenn.App. 139, 381 S.W.2d 312; Suzore v. Rutherford, 35 Tenn.App. 678, 251 S.W.2d 129, cert. denied, (1952); Allen v. Melton, supra, 20 Tenn.App. 387, 99 S.W.2d 219. The issue, then, is whether Travelers was appropriately punished. Booth v. Kirk, supra, 53 Tenn.App. 139, 381 S.W.2d at 317. Each case awarding punitive damages must rest upon its peculiar facts. Klein v. Elliott, 59 Tenn.App. 1, 436 S.W.2d 867 (1968); Booth v. Kirk, supra, 53 Tenn.App. 139, 381 S.W.2d at 317; Suzore v. Rutherford,supra, 35 Tenn.App. 678, 251 S.W.2d 129. See Gill v. Godwin, 59 Tenn.App. 582, 442 S.W.2d 661, 663 (1967), cert. denied, (1968); McDonald v. Stone, 45 Tenn.App. 172, 321 S.W.2d 845, 850 (1958), cert. denied, (1959). The award in the present case was not improper in view of defendant Travelers' conduct and will serve to deter insurance companies from engaging in the type of fraudulent conduct condemned here.
 
 III
 
 53
 The basis on which plaintiff Jackson sought the recovery of damages from Travelers was inducement to breach a contract. Under Tennessee law, there is both a common law action and a statutory action for inducement to breach a contract. Swift v. Beaty, 39 Tenn.App. 292, 282 S.W.2d 655 (1954), cert. denied, (1955); Note, Procuring Breach of Contract The Tennessee Treble Damage Statute, 5 Memphis St.U.L.Rev. 599 (1975). See Willard v. Claborn,220 Tenn. 501, 419 S.W.2d 168 (1966); Dukes v. Brotherhood of Painters, Decorators & Paperhangers of America, 191 Tenn. 495, 235 S.W.2d 7 (1950); Knoxville Milk Producer's Ass'n v. Blake, 171 Tenn. 283, 102 S.W.2d 64 (1936); Varno v. Tindall, 164 Tenn. 642, 51 S.W.2d 502 (1931). The Tennessee statute on inducement to breach a contract, T.C.A. § 47-15-113, has been said to be but a statutory enactment of the common law tort action, expressly setting treble damages in lieu of punitive damages. Emmco Insurance Company v. Beacon Mutual Indemnity Company, supra, 204 Tenn. at 551, 322 S.W.2d at 231; Swift v. Beaty, supra, 39 Tenn.App. 292, 282 S.W.2d 655; Koehler v. Cummings, 380 F.Supp. 1294, 1305 (M.D.Tenn.1971). If an award is given under the statute, treble damages are mandatory; by contrast, punitive damages are not always available under the common law action. Howard v. Haven, 198 Tenn. 572, 281 S.W.2d 480 (1955); Schwab v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, supra, 482 S.W.2d 143; Note, Procuring Breach of Contract The Tennessee Treble Damage Statute, supra at 607. Another possible difference between the common law and statutory actions for inducement to breach a contract is that at common law a preponderance of the evidence is needed to prove a case, while under the statute a "clear showing" is needed. Emmco Insurance Company v. Beacon Mutual Indemnity Company, supra, 204 Tenn. at 550, 322 S.W.2d at 231; Lichter v. Fulcher, 22 Tenn.App. 670, 673, 125 S.W.2d 501, 503 (1938), cert. denied, (1939).
 
 
 54
 The district court held that Travelers fraudulently induced the breach of the contract between plaintiffs Jackson and Edwards to the damage of plaintiff Jackson. The district court also determined that the treble damage statute, T.C.A. § 47-15-113, was not applicable in plaintiff Jackson's case and awarded $1,000 compensatory damages to plaintiff Jackson. Because the district court did not apply the mandatory treble damage provision of the statute and found that plaintiff Jackson had proven his case by a preponderance of the evidence, it is apparent that the district court's award of damages was grounded on the common law action for inducement to breach a contract.
 
 
 55
 There are seven elements to an action for inducement to breach a contract either at common law or under the statute. Dynamic Motel Management, Inc. v. Erwin, 528 S.W.2d 819, 822 (Tenn.App.), cert. denied, (1975), listed them.
 
 
 56
 1. There must be a legal contract.
 
 
 57
 2. The wrongdoer must have knowledge of the existence of the contract.
 
 
 58
 3. There must be an intention to induce its breach.
 
 
 59
 4. The wrongdoer must have acted maliciously.
 
 
 60
 5. There must be a breach of the contract.
 
 
 61
 6. The act complained of must be the proximate cause of the breach of the contract.
 
 
 62
 7. There must have been damages resulting from the breach of the contract.
 
 
 63
 In the present case, these elements of the action were present.[10] Plaintiffs Jackson and Edwards did have a contract. There was nothing in the record to indicate that any provision of that contract would render the contract void as against public policy, Finchum Steel Erection Corp. v. Ironworkers Local 384, 202 Tenn. 580, 308 S.W.2d 381 (1957), Cummings v. Patterson, 59 Tenn.App. 536, 442 S.W.2d 640 (1968), cert. denied, (1969), or that the contract was unenforceable in a way so as to affect the action for inducement to breach a contract. Love and Amos Coal Co. v. United Mine Workers, 53 Tenn.App. 37, 378 S.W.2d 430, cert. denied, (1963).
 
 
 64
 Travelers was made aware of the existence of the contract between plaintiffs Jackson and Edwards. Plaintiff Jackson sent letters to Travelers March 13, 1972, and March 20, 1972, stating that he represented plaintiff Edwards. Also, on March 27, 1972, Davidson, the claim representative for Travelers, was called by Cooper, the driver of the car, who told him that a lawyer had visited plaintiff Edwards at her apartment.
 
 
 65
 Travelers intentionally and not just negligently induced the breach of the contract. Davidson prepared and presented a statement to plaintiff Edwards at her apartment on March 28, 1972, disavowing plaintiff Jackson as her attorney. Plaintiff Edwards, a severely injured and emotionally distraught young woman, signed the statement after being falsely told that her bills could not be paid if she kept an attorney.
 
 
 66
 Travelers acted "maliciously" in procuring the breach. In this context, malice is the willful violation of a known right. 45 Am.Jur.2d, Interference § 3, cited by Dynamic Motel Management, Inc. v. Erwin, supra, 528 S.W.2d at 822. It is apparent from the record that Travelers did not wish to deal with an attorney on behalf of plaintiff Edwards and obtained the dismissal of plaintiff Jackson from the case by making false representations to plaintiff Edwards.
 
 
 67
 There is no question that there was a breach of the contract between plaintiffs Jackson and Edwards. On March 28, 1972, after plaintiff Edwards had signed the statement disavowing plaintiff Jackson's representation, the nurse, Mrs. Norris, told plaintiff Jackson over the telephone that his services were no longer needed. Plaintiff Jackson performed no legal services for plaintiff Edwards until September, 1973. Plaintiff Jackson understandably assumed that he had been dismissed by his client.
 
 
 68
 The breach of the contract was proximately caused by the successful effort of Travelers to obtain a statement from plaintiff Edwards disavowing plaintiff Jackson's representation. The fact that false representations were made to plaintiff Edwards on that occasion negates any possibility that plaintiff Edwards had freely chosen to deal directly with defendant Travelers. See Koehler v. Cummings, supra, 380 F.Supp. at 1309-10.
 
 
 69
 Plaintiff Jackson was damaged by the breach. Although he had a contingent fee contract, his client was certain to recover damages. Her case had been marked in Travelers' files as one of clear liability. See Koehler v. Cummings, supra, 380 F.Supp. at 1311-12.
 
 
 70
 We therefore hold that Travelers induced the breach of contract between plaintiffs Jackson and Edwards to the damage of plaintiff Jackson. We also reject Travelers' argument that its actions were not wrongful since they were within the scope of justification and privilege.
 
 
 71
 Inducement to breach a contract will not be wrongful if the person interfering can show a justification and privilege for such interference. Emmco Insurance Company v. Beacon Mutual Indemnity Company, supra, 204 Tenn. 540, 322 S.W.2d 226; Schwab v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, supra, 482 S.W.2d 143; Mefford v. City of Dupontonia, 49 Tenn.App. 349, 354 S.W.2d 823 (1961), cert. denied, (1962); Swift v. Beaty, supra, 39 Tenn.App. 292, 282 S.W.2d 655. As the case law on justification and privilege shows, the present case does not come within that exception to liability for inducement to breach a contract.
 
 
 72
 In Mefford v. City of Dupontonia, supra, 49 Tenn.App. 349, 354 S.W.2d 823, the law of justification and privilege was briefly discussed. Three situations in which a privilege to procure a breach of a contract were presented in quotations drawn from Prosser's treatise and the American Law Institute's Restatement on Torts. The actions of Travelers cannot be justified under any of these three occasions for privilege.
 
 
 73
 First, there may be a privilege for a person interfering with a contract to protect another person.
 
 
 74
 (A)n impersonal or disinterested motive of a laudable character may protect the defendant in his interference. This is true particularly where he seeks to protect a third person toward whom he stands in a relation of responsibility, as in the case of a mother endeavoring to exclude a diseased person from her child's school, . . . provided that the steps taken are not unreasonable in view of the harm threatened.
 
 
 75
 Prosser, supra, at 943-44. Defendant Travelers was not acting with an impersonal or disinterested motive of a laudable character but, as Travelers points out, in the economic interest of Travelers and its insured. Moreover, the "harm" threatened was that a badly injured claimant had hired an attorney to represent her, which was not the kind of harm this rule of privilege intended to cover, and using fraud to induce the breach was not a reasonable course of action.
 
 
 76
 Second, according to Prosser, supra at 944:
 
 
 77
 (t)here may also be a privilege to protect the public interest, as by removing a danger to public health or morals, or making complaint of the misconduct of an employee of a public utility, or taxpayers objecting to the expenditure of public money.
 
 
 78
 Travelers was not acting in the public interest.
 
 
 79
 Third, there may be a privilege for a person interfering with a contract when he has a responsibility to one of the contracting parties. The Restatement, Torts, § 770, states the conditions for the application of this rule of privilege.
 
 
 80
 One who is charged with responsibility for the welfare of another is privileged purposely to cause him not to perform a contract, or enter into or continue a business relation, with a third person if the actor
 
 
 81
 (a) does not employ improper means and
 
 
 82
 (b) acts to protect the welfare of the other.
 
 
 83
 In Mefford, this rule of privilege was applied to hold that a city was justified to induce the city's citizens to breach alleged contracts that the citizens had with a third person for servicing sewer lines because the city took over the operation of the sewer lines in the interests of the citizen's health and welfare. By contrast, in the present case, defendant Travelers was not acting to protect the welfare of plaintiff Edwards. Furthermore, defendant Travelers used fraudulent representations to procure the breach.
 
 
 84
 Another situation in which justification and privilege may operate occurred in Emmco Insurance Company v. Beacon Mutual Indemnity Company, supra, 204 Tenn. 540, 322 S.W.2d 226. There it was held that it was not unlawful or legally wrong for an insurance company with a direct interest in a claim to make a settlement, despite the fact that the terms of the settlement may compromise alleged contractual obligations of the settlor. In the present case, it was not the August, 1972, settlement that breached the contract between plaintiffs Jackson and Edwards. It was the statement taken on March 28, 1972, from plaintiff Edwards by Travelers' claim representative Davidson, who made false representations to obtain the statement.
 
 
 85
 Since there was no justification and privilege for Travelers' actions in the present case, only a statute of limitations defense would bar plaintiff Jackson's claim. Just as with plaintiff Edwards' claim, Travelers argues that the one year Tennessee statute of limitations, T.C.A. § 28-304, governing actions for injuries to the person, barred plaintiff Jackson's claim. We hold, however, that the interpretation given in Vance v. Schulder, supra, 547 S.W.2d 927, to the three year Tennessee statute of limitations governing action for injuries to personal property, T.C.A. § 28-305, makes that statute applicable to plaintiff Jackson's claim as well as plaintiff Edwards' claim. Plaintiff Jackson was fraudulently deprived of money by defendant Travelers wrongfully inducing the breach of his contract with plaintiff Edwards, and hence plaintiff Jackson suffered injury to his personal property within the contemplation of T.C.A. § 28-305. Because the three year statute applies, plaintiff Jackson's claim was not barred.
 
 
 86
 The only issue remaining is whether plaintiff Jackson was properly compensated with the award of $1,000 damages. Plaintiff Jackson has appealed, seeking a larger award of damages by the application of the Tennessee treble damage statute for inducement to breach a contract, T.C.A. § 47-15-113.
 
 
 87
 We uphold the district court's determination that plaintiff Jackson was not entitled to the application of the treble damage statute because his recovery was based on the common law action for inducement to breach a contract.[11] We also uphold the district court's award of $1,000 damages to plaintiff Jackson as a not unreasonable award. The present case provides an example of the problem in this area of law of estimating with any accuracy the damages to which a person such as plaintiff Jackson is surely entitled. Koehler v. Cummings, supra, 380 F.Supp. at 1311-12; Prosser, supra at 948.
 
 
 88
 The judgment of the district court, as modified herein, is affirmed.
 
 
 
 *
 Honorable Ralph B. Guy, Jr., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 By stipulation, the actions brought by plaintiffs Edwards and Jackson were consolidated for trial. The district court had jurisdiction because of the diversity of citizenship between the opposing sides. 28 U.S.C. § 1332
 
 
 [2]
 Travelers made no payments to Dr. Hester, even though defendant Travelers had received a bill from him on May 1, 1972, for $1215. On March 30, 1972, defendant Travelers and Murray Ohio had been billed $5,522.59. (Plaintiff Edwards was insured under a group hospitalization insurance program with her employer Murray Ohio.) Murray Ohio on April 11, 1972, paid $3,184.47. After defendant Travelers made a $2,338.12 payment on April 18 or 19, 1972, Nashville General Hospital sent out a new total bill of $5,766.24 on April 20, 1972, which was corrected on May 4, 1972, to $7,279.95. Murray Ohio made payments in May and July of 1972, but defendant Travelers did not make any more payments on the bill. An account of $1,007.47 was left unpaid, and in February, 1973, it was turned over for collection against plaintiff Edwards. Also, discovered during the pretrial stage of this litigation in defendant Travelers' file on plaintiff Edwards was an envelope, postmarked July 3, 1972, left unopened. At trial the envelope was opened, and three bills, totaling $405.09, relating to the medical care of plaintiff Edwards were found inside the envelope
 
 
 [3]
 On June 9, 1972, Claim Examiner Herb Knott of the home office of Travelers sent a memorandum to James Luther, supervisor of the Claims Department in Nashville, asking whether the company should go ahead and put up the policy limits. On June 13, 1972, Luther replied to Knott. Excerpts from the memorandum show that defendant Travelers believed that plaintiff Edwards' claim was easily worth $50,000
 I have not seen this girl personally but according to C/R Davidson she is a pathetic sight. The medical reports that we have prior to the hospital history did not appear to paint the picture the way it actually is. According to C/R Davidson you can hardly understand this girl when she talks and she is having to undergo speech therapy at this time. She still has not regained full use of her vision and they are still trying to correct this. This girl is confined to a wheel chair and the left side of her body is still paralyzed. He states that prior to this accident this girl appeared to be a pleasant looking individual that she has very nice features for a woman. It appears that if they bring this girl into the courtroom that there is no doubt that the jury will be sympathetic.
 He is still following up to determine whether we can determine how much this girl had had to drink prior to the accident. We would be in better shape if she hadn't been drinking anything as it was obvious that our man was drunk. He stated that he was not drunk and had full use of his capacities but you will note that he registered .19 on the drunkometer and legally drunk in Tennessee is now only .10. We might be able to use this to mitigate our damages but this claim is worth so much moneywise that it appears that no matter what we do that our policy limits are still going to be good. . . .
 It is our opinion that this girl will never make a recovery. . . . Bob Mallory stated that we had set up $45,000 hoping to save a little bit on our policy limits but when the file is returned I plan on setting up $50,000. I do not feel that this is a claim that we should be flirting with a bad faith judgment and this claim is obviously worth our policy limits.
 On June 28, 1972, Knott advised Edward Jenkins, Manager of the Claim Department in Nashville, that he had reviewed the file and that he had authorized $50,000 to be paid. Knott also sent a form authorizing a draft to be drawn in that amount.
 Luther then consulted with S. McPheeters Glasgow, a Nashville attorney, to determine what type of settlement would be made with plaintiff Edwards. Glasgow advised defendant Travelers to settle for an amount less than $50,000. The district court, however, found that defendant Travelers was not entitled to rely on Glasgow's recommendations because "Mr. Glasgow was not furnished with complete medical information on the plaintiff (Edwards)." 403 F.Supp. at 995.
 
 
 [4]
 Defendant Travelers argues that the knowledge of the nurse Mrs. Norris should be imputed to plaintiff Edwards. We reject this contention. The sympathies and economic interest of Mrs. Norris lay with defendant Travelers. Moreover, defendant Travelers cites no Tennessee case law that indicates that the knowledge of Mrs. Norris should be imputed to plaintiff Edwards even if Mrs. Norris had not been so friendly with defendant Travelers
 
 
 [5]
 Because it is clear that plaintiff Edwards was damaged monetarily, we do not deal with the argument that plaintiff Edwards suffered damage in emotional distress
 
 
 [6]
 In an 1813 case, the Tennessee Supreme Court took the view that it was always the duty to disclose facts not apparent to the other party. In Perkins v. McGavock, 3 Tenn. 415, 417, it was held:
 . . . to be a sound principle of equity that each party to a contract is bound to disclose to the other all he may know respecting the subject-matter materially affecting a correct view of it, unless common observation would have furnished the information. Not disclosing facts within the knowledge of one and not the other, would in equity be esteemed a concealment which is both immoral and unjust.
 In a more recent case, the Tennessee Supreme Court applied this principle with the modification that common observation included the exercise of ordinary diligence. Simmons v. Evans, 185 Tenn. 282, 286, 206 S.W.2d 295, 296 (1947).
 
 
 [7]
 See Part III, infra
 
 
 [8]
 If the settlement in Lee v. Drabkin, 197 Tenn. 376, 273 S.W.2d 473 (1954), had not been approved in court when Mrs. Lee had counsel, it is questionable whether the Tennessee Supreme Court would have upheld the settlement. See Lindsey v. Hunt, 215 Tenn. 406, 412, 384 S.W.2d 441, 443 (1964). Without any existing confidential or fiduciary relationship, the Tennessee Supreme Court has in the past struck down contracts for fraud based on undue advantage. Stephens v. Ozbourne, 107 Tenn. 572, 64 S.W. 902 (1901); Coffman v. Lookout Bank, 73 Tenn. 232 (1880); Leutz v. Earnhart, 59 Tenn. 711 (1873); King v. Cohorn, 14 Tenn. 75 (1834)
 
 
 [9]
 While there may be some uncertainty as to the amount of damage plaintiff Edwards suffered, an award of damages to her would be prohibited only if the fact of damage was uncertain. Stevens v. Moore, 24 Tenn.App. 61, 139 S.W.2d 710, 719, cert. denied, (1940); Koehler v. Cummings, 380 F.Supp. 1294, 1311-12 (M.D.Tenn.1971). We entertain no doubts that plaintiff Edwards was damaged
 
 
 [10]
 Much of the argument that defendant Travelers makes on this issue depends upon a version of the facts testified to by defendant Travelers' claim representative Davidson and the nurse Mrs. Norris but rejected by the district court. We believe that the record supported the district court's findings
 
 
 [11]
 We thus need not face the question whether the one year Tennessee statute of limitations, T.C.A. § 28-304, which governs actions for statutory penalties as well as for injuries to the person, applies to the statutory action for inducement to breach a contract because of the treble damage provision of T.C.A. § 47-15-113. We are directed to no cases on the question. If the one year statute of limitations did apply to the treble damage statute, then there would be different statutes of limitations applicable to the common law and the statutory actions for inducement to breach a contract