840 F.2d 18
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WEST KENTUCKY BATTERY, INC., Plaintiff-Appellee,
v.
SEVIER COUNTY BANK, Defendant-Appellant.
 No. 87-5185.
 United States Court of Appeals, Sixth Circuit.
 Feb. 29, 1988.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and ALLEN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Sevier County Bank misrepresented to another bank that it had no liens on a customer's inventory of batteries and that the customer's accounts were satisfactory. Those misrepresentations led to plaintiff West Kentucky Battery's extending additional credit to Sevier's customer. The customer went bankrupt without having paid West Kentucky. The latter sued the Sevier Bank and recovered a judgment against it. The defendant bank contends on appeal that there could be no liability in this situation because West Kentucky was not entitled to rely upon the misrepresentations. The evidence indicates that the bank intended that West Kentucky should rely on the representations, however, and that West Kentucky reasonably did so. The district court so found, and we shall affirm the judgment.
 
 
 2
 * The controversy had its roots in Sevier County Bank's issuance of approximately $700,000 in unsecured letters of credit to Tennessee-Carolina Battery Co., Inc. on the authority of an assistant vice-president of the bank. When the bank's board of directors and its president, Ross B. Summitt, Sr., became aware of the letters of credit and the serious problem posed by the bank's unsecured potential liability thereon, they took various steps to reduce their exposure. On January 21, 1985, the bank obtained a $712,472.41 master note from Tennessee-Carolina Battery to cover the letters of credit. The bank had Mr. King, the owner and president of Tennessee-Carolina Battery, sign a personal guaranty. Finally, the bank perfected a security interest in Tennessee-Carolina's present and future inventory of batteries.
 
 
 3
 Plaintiff West Kentucky Battery was a major supplier of batteries to Tennessee-Carolina Battery and its subsidiaries. Early in May of 1985 Mr. King called the president of West Kentucky, Mr. Van Metre, and told him that Tennessee-Carolina was having cash problems and needed an extra thirty days to pay $70,000 due in May for batteries that had already been delivered. Mr. Van Metre indicated that in order to continue supplying Tennessee-Carolina, West Kentucky would have to get a loan; that would necessitate West Kentucky's bank, the Citizens Bank and Trust Co., obtaining a security interest in the Tennessee-Carolina receivables, and Citizens Bank would need credit information from Tennessee-Carolina's bank. Mr. King told Mr. Van Metre to have his banker contact R.B. Summitt, Jr., at Sevier.
 
 
 4
 Mr. Van Metre did so. As a result of some confusion, the representative of Citizens Bank--Mr. Randall Blackburn--ended up talking with Ross B. Summitt, Sr., also an officer of defendant Sevier County Bank. As Mr. Blackburn testified,
 
 
 5
 "Mr. Summitt reported that the bank had two checking accounts with which were handled satisfactorily. He gave me the description of four loans which were presently outstanding, that all of the loans were secured by U.C.C. on equipment; that they did not have inventory as collateral and that Mr. King had approximately 1,500 accounts and that they were satisfactory." (Emphasis supplied.)
 
 
 6
 Mr. Blackburn also testified about the importance to Citizens Bank of the information about Tennessee-Carolina's inventory:
 
 
 7
 "Q Of what importance, Mr. Blackburn, was the statement that the bank had no U.C.C. on Mr. King's company's inventory to the bank?
 
 
 8
 A I thought it was unusual when Larry [Van Metre] came in and said that he had a security agreement on the inventory. So I specifically asked that question when I called the bank. I was surprised when Mr. Summitt confirmed that they did not have the inventory. It was a significant impact to us, because by them not having the inventory and us having an arrangement, line of credit, with West Kentucky Battery on inventory and receivables, it was significant to our bank."
 
 
 9
 The fact that the receivables from Tennessee-Carolina could be secured by a lien on that company's inventory, in other words, encouraged Citizens Bank to lend West Kentucky money on the security of the receivables.
 
 
 10
 Mr. Blackburn reported to Mr. Van Metre that Tennessee-Carolina's credit rating appeared to be satisfactory, and Citizens Bank made the loan to West Kentucky. Mr. Blackburn did not specifically inform Mr. Van Metre that Mr. Summitt had told him that defendant Sevier Bank had no liens on Tennessee-Carolina's inventory.
 
 
 11
 West Kentucky subsequently shipped batteries worth $70,000 to Tennessee-Carolina's subsidiaries. The corporate enterprise subsequently filed a petition in bankruptcy. Prior to that time West Kentucky received $64,000 of the $70,000 that had been owed in May; none of the $70,000 owed for the new shipment was ever paid.
 
 
 12
 The district court found that West Kentucky relied on Sevier Bank's misrepresentations "in (1) forbearing on the Tennessee-Carolina debt for an additional 30 days and (2) shipping $70,000 worth of additional batteries." The district court also found that Sevier County Bank:
 
 
 13
 "knowingly misrepresented material facts to Blackburn in stating that King's accounts were satisfactory and in stating that the SCB [defendant] had no security interest in the collateral of Tennessee-Carolina. The latter misrepresentation was obviously in SCB's interest--it could have increased the inventory of batteries in Tennessee-Carolina's possession in which SCB had a security interest."
 
 
 14
 The plaintiff had sought $76,000 in compensatory damages. The district court found, however, that there was no evidence indicating that Tennessee-Carolina would have been able to pay any of the $70,000 it owed plaintiff at the time the misrepresentations were made, and that only $6,000 of plaintiff's loss was proximately caused by defendant's misrepresentations. Because the misrepresentations were "knowing, willful and in bad faith," the district court assessed punitive damages of $18,000, in addition to awarding $6,000 in compensatory damages. Defendant Sevier Bank has appealed. There was no cross-appeal.
 
 II
 
 15
 We shall confine ourselves to a discussion of the three main issues raised by the defendant on appeal, adopting the district court's opinion as to the remaining issues.
 
 
 16
 First, Sevier Bank asserts that the plaintiff West Kentucky failed to prove causation because West Kentucky never knew of the misstatements. Sevier Bank argues that because Mr. Blackburn, of Citizens Bank, never actually told West Kentucky that Sevier did not have liens on Tennessee-Carolina's inventory, West Kentucky could not have relied upon that representation.
 
 
 17
 The argument is not persuasive. West Kentucky knew that it was unlikely to get a loan from Citizens Bank if the Tennessee-Carolina inventory was not available as security. When Mr. Blackburn told West Kentucky that Tennessee-Carolina's credit appeared satisfactory and the loan could go forward, that was tantamount to saying that the Sevier Bank had confirmed that it had no security interest in the inventory.
 
 
 18
 Defendant next argues that even if West Kentucky did learn of the representations, it could not reasonably rely upon information about Tennessee-Carolina in selling batteries to the latter's subsidiaries. This argument, too, is unpersuasive. West Kentucky is not suing on a contract theory; this is a tort case, and the district court had to decide whether it was reasonably foreseeable that West Kentucky would deal with subsidiaries on the basis of financial information provided about the parent. The district court evidently thought it was, and we are in no position to disagree. The record indicates that the separateness of the various subsidiaries was not strictly observed, and that plaintiff in fact dealt with Tennessee-Carolina's subsidiaries on the basis of the financial strength of the parent corporation and the sole stockholder. Tennessee-Carolina's president, who owned all of the stock of the various corporations, seems to have spoken for all. The record further indicates that some of the invoices for the batteries shipped to Tennessee-Carolina subsidiaries were sent out by Tennessee-Carolina itself.
 
 
 19
 Finally, defendant argues that plaintiff's damages were not caused by the breach of any duty defendant owed to plaintiff. Section 533 of the Restatement of the Law on Torts, Second, states that a maker of a fraudulent misrepresentation is liable to a third person who acts in reliance thereon if the representation
 
 
 20
 "is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved."
 
 Comment d to Sec. 533 explains:
 
 21
 "[I]t is not enough to make the rule stated in this Section applicable that the maker of the misrepresentation does recognize, or should recognize, the possibility that the third person to whom he makes it may repeat it for the purpose of influencing the conduct of another. He must make the misrepresentation with that intent or must have information that gives him special reason to expect that it will be communicated to others, and will influence their conduct."
 
 
 22
 In this case, the district court found that defendant Sevier Bank acted in bad faith and intended to cause plaintiff to ship batteries that would feed Sevier Bank's liens and thus improve the bank's shaky security position. The existence of such an intent is a question of fact, and we cannot say that the district court's resolution of the question was clearly erroneous. The fact that the district court's finding was based on circumstantial evidence does not make it erroneous. As this court stated in Edwards v. Travelers Insurance of Hartford, Connecticut, 563 F.2d 105, 112 (6th Cir.1977), "Tennessee courts have recognized that fraud by its nature is often difficult to prove and thus may be properly proved by wholly circumstantial evidence." (Citations omitted.)
 
 
 23
 For the foregoing reasons, and for the reasons stated in the opinion of the district court filed on November 13, 1986, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles M. Allen, United States Senior District Judge for the Western District of Kentucky, sitting by designation