# F. B. SWIFT, Appellant, v. HENRY M. BEATY, Appellee.—282 S. W. (2d) 655.

Western Section. August 23, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

John R. Gilliland, and Canale, Glankler, Little, Boone & Loch, all of Memphis, for appellant.

Lake Hays, Henry M. Beaty, Jr., and Laughlin & Watson, all of Memphis, for appellee.

CARNEY, J.   Plaintiff below, F. B. Swift, appeals in error from a directed verdict in favor of the defendant, Henry Beaty Sr.

On August 5, 1952, plaintiff had filed declaration in four counts alleging: (1)  Slander; (2) Slander of title; (3) Common law count alleging unlawful procurement of breach of contract between plaintiff and one R. C. Moore; (4) Violation of Section 7811 of the Code of Tennessee providing for treble damages for unlawful procurement of breach of contract.

Counts One and Two were dismissed by plaintiff, and he went to trial on Counts Three and Four.

Plaintiff, Swift, had been in the automobile tire business and used car business on Union Avenue, in Memphis, Tennessee, for many years. The defendant, Henry Beaty Sr., owned all of the stock of the Henry Beaty Motor Co., Inc., which was engaged in selling Kaiser-Frazer automobiles, parts, accessories, including used cars.

The defendant, Beaty Sr., negotiated with plaintiff, Swift, with reference to selling him all of the assets of Henry Beaty Motor Co., Inc., and they reached a tentative agreement for the sale of the physical assets and accounts receivable based on inventory price less depreciation. When the sale was finally completed, upon the suggestion of Beaty's attorney, Beaty Sr. simply transferred all stock of Henry Beaty Motors, Inc. to Swift at a stipulated price of $37,477.84. This stock was then pledged to Beaty as security for his indebtedness. The price of the stock was based on the value of the assets actually transferred as shown by an attached inventory.

The transaction was closed in October 1950, and $477.84 of the purcase price was paid in cash, and the balance of $37,000 was represented by Swift's personal note for $9,000 due January 10, 1951; 23 notes for $1,000 each due monthly beginning February 10, 1951; and a final note of $5,000, the due date of which does not appear clearly in the record.

The assets of Henry Beaty Motor Co., Inc. consisted of a number of used cars, and it was contemplated that Swift would move these first and the proceeds used to pay the $9,000 note.

As stated above, the only security Beaty had was the pledge to him of the corporate stock. It appears, however, that Beaty considered Swift solvent and also that the business had not been doing well and Beaty was very anxious to dispose of it.

Swift took over all the assets except a few articles of furniture and fixtures, and continued to operate the Beaty Motors Inc. at the old location for several weeks until he could move the parts, equipment, etc., to his location on Union, at which time he consolidated the businesses and ran the entire business under the name, Swift Motors.

In January 1951 Swift as President of Beaty Motors Inc., transferred all assets of Beaty Motors for $1 consideration to F. B. Swift, individually, doing business as Swift Motors. No further corporate action was ever taken and the charter was allowed to expire or be cancelled by the Secretary of State for nonpayment of franchise taxes, etc.

Swift continued to pay the purchase money notes when due until the latter part of 1951 when business got worse and Swift began to run out of money.

It developed that not only had Swift made an improvident deal in buying out the Beaty Motors Inc., but that some of the accounts receivable purchased were not collectible and also some assets purchased had not been depreciated from original cost as agreed by the parties.

Swift notified Beaty Sr. of his dissatisfaction and a desire for an adjustment on the purchase price. Negotiations for adjustment failed, Swift became in default on the notes, and Beaty Sr. turned the same over to his son, Mr. Henry Beaty Jr., attorney, of the Memphis, Tennessee, Bar for collection.

In the meantime, plaintiff, Swift, had advertised his entire business for sale, his real estate, and personal property, which included some which had been purchased from Beaty Motors.

On May 8, 1952, Swift made written agreement with one R. C. Moore to sell real estate, auto parts, equipment, fixtures, etc., for $85,000 and the parties fixed May 15,

1952, as the date for closing said transaction. $3,000 earnest money was placed in escrow with Commerce Title Guaranty Company, of Memphis, Tennessee, by Moore.

Purchaser, Moore, requested his attorney, Mr. Wiley Bullock, of Memphis, Tennessee, to check title to the property he was buying. He consulted Mr. Henry Beaty Jr. and was informed that he, Beaty Jr., considered that Beaty Sr. had a lien on the personal property formerly belonging to Beaty Motors, Inc., and that there was a balance due of approximately $17,000 on said notes. Beaty Jr. further stated that suit was going to be brought on the notes whether Moore purchased or not, and that, in substance, Moore might be buying a lawsuit.

On the basis of this information Mr. Bullock recommended that Moore not go through with the purchase since the deal did not appear to be worth having a lawsuit over.

Moore, the purchaser, however, did not expressly refuse to complete the contract. He made, in effect, two counter offers, either to complete the contract as agreed upon and set aside $15,000 to protect him against loss if Beaty Sr. should prevail in his claim of a lien against part of the personalty, or to pay $70,000 for the real estate and omit the personal property entirely.

Plaintiff, Swift, evidently felt that he had been wronged by Beaty Sr. in the original transaction and also felt that Beaty had no lien of any kind on the personal property. He refused either of the offers of Moore and the deal did not go through. It seems to be admitted that in a Chancery lawsuit plaintiff, Swift, was allowed certain credits against the purchase money notes for inflated values of some of the parts and/or accounts receivable purchased.

Plaintiff, Swift, was unwilling to file suit against Moore

for breach of his contract or to try to force him to go through with it.

At the request of the Commerce Title Company, holder of the earnest money, Swift and Moore signed the following agreement on the back of the original contract:

"May 23, 1952.

Memphis, Tennessee

"For and in consideration of the return of the earnest money to the purchaser, we, the undersigned parties to the foregoing contract hereby cancel this contract by mutual consent, and each party relinquishes his right, title, and interest in and to said contract. "Signed, this 23rd day of May 1952 at Memphis, Tennessee aforesaid.

"/s/ F. B. Swift
"/s/ R. C. Moore"

After the surrender of the earnest money Swift proceeded to sell out the personal property including parts, parts bins, accessories, etc., piecemeal. According to Swift's testimony this personal property brought about $10,000 less than it would have brought had the deal with Moore gone through.

Upon the trial below when the plaintiff introduced the original contract with Moore and then the rescission or cancellation on the back thereof, copied above, the Trial Court, upon motion of the defendant, held that the effect of the cancellation or rescission of said contract was to relieve the defendant, Beaty Sr., of any liability for procuring the breach of said contract.

The plaintiff was allowed to complete his evidence out of the presence of the jury for the record on this appeal, after all of which a verdict for defendant was directed.

Assignments of Error No. 4 and No. 5 complain of the action of the Trial Judge in excluding from evidence

the testimony of plaintiff and his witness, Mrs. Barbara Wade concerning the circumstances attendant upon the execution of said cancellation of the original contract between Swift and Moore.

Plaintiff offered the following evidence which was excluded:

That after Moore had refused to go through with the deal, Mrs. Wade, representing Commerce Title Company, who held the earnest money, called and asked him whether they would close the deal or not. Plaintiff sought to show further that he informed her that it looked like the deal was off, and she asked about the $3,000 earnest money put up by Moore. Plaintiff said he told her to give it back to Moore, that he was not going to sue him. That then she asked him to come by and give her authority in writing to return the money and he told her he would sign anything she drew up; that she drafted the cancellation agreement and he signed the same at her request in the absence of Mr. Moore. That there was no mutual agreement between him and Moore at all. Evidently Moore signed later.

Mrs. Wade corroborated the testimony of plaintiff, Swift.

The Trial Judge was of the opinion that the evidence was inadmissible to vary or contradict the terms of the written cancellation agreement signed by the parties, Swift and Moore.

In our opinion, the learned Trial Judge was in error in excluding such evidence. As we understand it, the general rule is that the Parol Evidence rule does not apply in litigation between one or more parties to the written instrument and a stranger to the written instrument, but only applies to litigation between the parties and their privies.

From Nashville Interurban Ry. v. Gregory, 137 Tenn. 422, 437, 193 S. W. 1053, 1056, we copy as follows:

"The rule that parol contemporaneous evidence is not admissible to alter or vary the terms of a valid written instrument has reference only to the parties to the instrument. It cannot affect third parties who, if it were otherwise, might be prejudiced by things contained in the writing contrary to the truth, through carelessness, ignorance, or fraud. A third party is not precluded from proving the truth about a document however the truth may vary from the statements contained in said document. Myers v. Taylor, 107 Tenn. 364, 64 S. W. 719; Greenleaf on Evidence, vol. 1, 279; 17 Cyc. 749; 10 R. C. L., p. 1020."

See also Cooper v. Pearce, Tenn. Ch. App., 62 S. W. 223; and August v. Seeskind, 46 Tenn. 166.

Therefore, we think it was competent for the plaintiff to have proven that there was no release or rescission of the contract with Moore if such had been the case. Assignments of Error No. 4 and No. 5 are sustained.

However, we do not hold that these two errors require a reversal of the case. When we consider the cancellation contract in the light of the excluded evidence, we do not find any material change in the contract.

It is still evident that plaintiff, Swift, after the alleged breach deliberately and intentionally executed a written cancellation of his original contract with Moore. This written contract is absolutely binding and plaintiff, Swift, has released Moore of any liability thereunder.

Swift could have reserved his right of action, if any, against Moore for the alleged breach by appropriate wording in the contract of rescission or cancellation, but

he did not do so. See 12 Am. Jur.—Contracts—Sec. 457, p. 1040—Rescission by Subsequent Agreement.

We now are brought to the question raised by Assignment of Error No. 2 whether the Trial Judge was correct in his ruling that the act of Swift in giving a written release of his claim against Moore operated to relieve the defendant, Beaty Sr., from liability for procuring the breach of the contract by Moore.

█ Plaintiff-in-error, Swift, contends that the right of action which Swift had against Moore was for breach of contract and the action against Beaty was for a tort. This is a correct statement of the general rule. Both the common law tort action and the statutory cause of action have been recognized in this State in several appellate court decisions: Varno v. Tindall, 164 Tenn. 642, 51 S. W. (2d) 502; Donnelly v. Jackson Bros., 2 Tenn. Civ. App. 408; Knoxville Milk Producer's Ass'n v. Blake, 171 Tenn. 283, 102 S. W. (2d) 64; Dukes v. Brotherhood of Painters, 1950, 191 Tenn. 495, 235 S. W. (2d) 7, 26 A. L. R. (2d) 1223; Lichter v. Fulcher, 22 Tenn. App. 670, 125 S. W. (2d) 501.

█ Likewise, the general rule is that a person's liability in tort for wrongfully inducing the breach of a contract is in no way affected by the fact that the injured party also has a right of action in contract against the defaulting party to the contract. See 30 Am. Jur.—Interference—Section 28, p. 78.

However, we are cited to no authority in Tennessee or elsewhere holding that an injured party has an action in tort against the person inducing a breach of the contract after such injured party has given a complete release and discharge of liability to the party breaching the contract.

Defendant-in-error insists that by analogy the ruling

in Watts v. Warner, 151 Tenn. 421, 269 S. W. 913, is controlling.

In that case complainant, lessee, Watts, sued defendant, Warner, lessor, for breach of a lease contract for a certain parcel of real estate and also joined as defendant the Piggly-Wiggly Corp. to whom the defendant, Warner, had leased the same property alleging that defendant, Piggly-Wiggly had unlawfully induced the defendant, Warner, to breach the contract with complainant.

Defendant, Warner, demurred to bill on grounds that showed the lease invalid and unenforcible because of inadequate description to the property sought to be leased. The Supreme Court in an opinion by Chief Justice Green held that the lease was invalid as to Warner on account of the Statute of Frauds and that since the lease contract had been declared void and unenforcible as to Warner, then Piggly-Wiggly Corporation could not be liable for wrongfully inducing the breach of a void or unenforcible contract.

From said case, 151 Tenn. at page 425, 269 S. W. at page 914, we quote:

"So this bill against Piggly-Wiggly Stores, Inc., rests on the proposition that there was a contract between Mrs. Warner and the complainant. If there was no such contract, then Piggly-Wiggly Stores, Inc., could not have damaged complainant as alleged. Chapter 154 of the Acts of 1907, upon which the suit as to Piggly-Wiggly Stores, Inc., is founded, denounces interference with 'any lawful contract.' And, aside from the statute, we take it there could be a recovery at common law only for interference with a lawful contract.

"When, therefore, Mrs. Warner successfully interposed a plea of the statute of frauds and avoided the

alleged contract, the whole basis of the complainant's suit against Piggly-Wiggly Stores, Inc., was swept away. No judgment could be based against a defendant for interference with an unenforceable repudiated contract. Certainly after repudiation there were no legal rights under such a contract which could be infringed.''

In the absence of authority to the contrary, we are of the opinion that the principle announced by Chief Justice Green in Watts v. Warner, supra, is controlling and that the act of Swift in rescinding or cancelling the contract with Moore without reserving his right of action for the alleged prior breach operated to discharge any claim he might have had against Beaty Sr. for inducing the alleged breach.

Therefore, Assignment of Error No. 2 is respectfully overruled.

Assignment of Error No. 1 challenges the correctness of the Trial Judge in directing the verdict for defendant. When we consider the facts in their entirety as shown by the testimony of the plaintiff and his witnesses, we are of the opinion that the Trial Judge correctly directed a verdict for defendant for another reason.

The acts complained of on the part of defendant's attorney, Mr. Henry Beaty Jr., were simply an opinion to Moore's attorney that as an attorney he thought his client and father had a lien on some of the old assets of Henry Beaty Motors, Inc., to secure the payment of the purchase money notes which were in default and that he was planning to file suit to enforce such lien.

We do not voice any opinion as to whether there was or was not any such lien. Since his father had only the stock of Henry Beaty Motors Inc. pledged to him for security for Swift's notes, and since the assets of the

corporation had been transferred to Swift individually for only $1 consideration, and since the purchase money notes were in default and Swift was seeking to dispose of said assets along with his other property, we believe that Beaty Jr. did have reasonable grounds to and did believe that his father was entitled to some sort of lien, equitable or otherwise, against said former assets of Henry Beaty Motors Inc.

Likewise, we think he was under a legal duty to notify the attorney for the would-be purchaser of his claim or opinion concerning such lien. If he had answered otherwise, he might well have estopped his client from any claim against said assets.

There is no proof of affirmative effort or improper motive on the part of Beaty Sr. or Beaty Jr. to interfere with unduly or to block the sale by Swift of his business to Moore; only the expression of an opinion in answer to a direct question. The fact that Moore was deterred from completing the contract by Mr. Henry Beaty Jr.'s answer to his question does not, in our opinion, make Beaty Sr. liable for procuring the breach of said contract.

We think that under the circumstances proven in this case, the action of Beaty Jr. was justifiable and that, therefore, his client would not be liable for procuring the breach of said contract either under the common law count or under the statutory count of the declaration.

From 30 Am. Jur. p. 79—Section 28—Other Matters Affecting Liability, we quote one sentence:

"* * * One who causes a purchaser to refuse to perform his contract by notifying such purchaser of his own claim to the property sold, incurs no liability * * * " citing 84 A.L.R. 64.

Assignment of Error No. 1 must be respectfully overruled.

We do not deem it necessary to rule upon Assignment of Error No. 3 which complained of the action of the Trial Judge in refusing to permit the plaintiff to testify to reasons given by Moore and his attorney, Wiley Bullock, when they refused to complete the contract. Later Bullock testified as witness for plaintiff that he had advised Moore not to complete purchase because Mr. Henry Beaty Jr. had said they would be buying a lawsuit. The testimony of Bullock cured any error the Trial Court might have made in refusing to permit Swift to testify to what Bullock and Moore told him.

Judgment will be entered dismissing the appeal-in-error and taxing plaintiff and his surety with the costs of this appeal.

Avery, P. J. (W.S.), and Bejach, J., concur.