Janet TESTERMAN, Plaintiff/Appellant,

v.

Larry E. TRAGESSER, Defendant/Appellee.

Larry E. TRAGESSER, et ux., Jane Tragesser, Plaintiffs,

v.

Janet E. TESTERMAN, Defendant.

Court of Appeals of Tennessee, Western Section, at Knoxville.

Nov. 21, 1989.

Application to Appeal Denied by Supreme Court April 2, 1990.

William S. Lockett, Jr., Kennerly, Montgomery & Finley, P.C., Knoxville, for plaintiff-appellant.

Art Roberts, Jr., Art Roberts, Jr., P.C., Knoxville, for defendant-appellee.

FARMER, Judge.

The plaintiff appeals from the trial court's order granting the defendant's motion for dismissal of her causes of action for common law procurement of breach of contract, for procurement of breach of contract in violation of T.C.A. § 47–50–109 and for intentional interference with business relations or prospective contractual relations, and for failure to assess punitive damages after the court found a trespass.

The plaintiff, Janet Testerman ("Testerman"), brought this action against Larry E. Tragesser and wife Jane Tragesser ("Tragessers"), after they built a driveway and retaining wall which encroached on a lot belonging to Testerman. The parties own adjacent properties in a Knoxville subdivision. The complaint alleges that the Tragessers committed an intentional trespass by causing the wall and driveway to be constructed on the lot owned by Testerman and that this was a continuing trespass; that the Tragessers had intentionally induced the breach of a contract between Testerman and a third party; that the Tragessers had violated T.C.A. § 47–50–109 (statutory procurement of the breach of contract); and that the Tragessers intentionally and maliciously interfered with the prospective contractual relationship between Testerman and a purchaser. Testerman sought compensatory and punitive damages.

The Tragessers filed a petition for declaratory judgment against Testerman asking the court to determine the rights and responsibilities of the parties. The petition alleged that, while the parties were negotiating for an easement, Testerman acquiesced in the construction and advised

them the details could be worked out when her pending divorce was settled. By agreed order the cases were consolidated for trial. At the close of Testerman's proof, the Tragessers moved for dismissal of the claim for statutory and common law inducement of breach of contract. The trial court found that Testerman failed to prove any damages and also found that Testerman had released the purchaser from the contract. At the close of all proof the trial court dismissed Testerman's claim for interference with business relations because there was no adequate showing of damages. The trial court also found that the Tragessers had failed to establish a case for equitable estoppel and that the continued occupancy of a portion of Testerman's property constituted an ongoing trespass. The trial court ordered the Tragessers to remove the encroachments and restore the property to its original condition within 90 days, or Testerman would be allowed to have the work performed at Tragessers' expense. The Chancellor further found that the Tragessers' trespass was not malicious and refused to award punitive damages to Testerman.

On appeal Testerman raises three issues:

1. Whether the trial court committed reversible error in holding that Testerman did not prove intentional interference with business relations by Tragesser.

2. Whether the trial court committed reversible error in holding that Testerman did not prove intentional interference with contract by Tragesser.

3. Whether the trial court committed reversible error in refusing to assess punitive damages against Tragesser for trespass.

 We address the first two issues together, as both would require the plaintiff to establish her damages. The measure of damages available to the vendor from the breaching vendee in a real estate contract is the difference between the contract price and the fair market value at the time of breach, plus any special damages that arise which are within the reasonable contemplation of both parties when the contract is made. *Turner v. Benson*, 672

S.W.2d 752, 755 (Tenn.1984). Although one who induces a breach is liable for consequential losses, the damages recoverable for the pecuniary loss of the contract are common to both the action for breach and the action for inducement to breach. *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169 (Tenn.App.1987). The Chancellor found that Testerman had established that the property had a fair market value of $130,000.00 and that she had contracted to sell the property to West for $130,000.00. He reasoned that:

> The only loss or damage shown, with respect to the West contract loss, was the claim as asserted here of one hundred and thirty thousand dollars for the price of the land. The measure of damages, as we understand is the difference between the contract price and the value of the property. There is no testimony that the property was not worth a hundred and thirty thousand dollars, and under the state of the evidence we would have to conclude that the land is worth a hundred and thirty thousand dollars. That's—well, it's not been so testified directly on behalf of Plaintiff Testerman, but that certainly is the import of all the testimony. The difference between a hundred thirty thousand dollars and a hundred and thirty thousand dollars is zero. No damages have been proved, so there are no damages to triple. We, I think in that circumstance, that even if there was an induced breach of contract or interference with the contract under the statute, that no loss recoverable has been shown. So for both reasons; that is that the basis for damages under the triple damage statute has not been shown to exist on a liability basis and on a damage basis, no case has been proved.

Since Testerman had failed to show any other damages, the Chancellor found that Testerman suffered no damages and dismissed both causes of action.

Testerman contends that because the evidence established the contract price at $130,000.00 and the fair market value of the property as $80,000.00, she suffered damages in the amount of $50,000.00. A

review of the record shows that Tragessers' expert witness, G.T. Ballanger, testified that the lot in question had 253 frontage feet and that approximately 190 frontage feet would be worth approximately $80,000.00 based on other sales in that neighborhood. However, Ballanger also testified that the entire lot with 253 frontage feet would be worth in excess of $100,000.00. Mr. West, the person who contracted with Testerman to buy the lot, stated that he intended to buy the entire lot and would sell back approximately 60 feet to Mrs. Testerman. The contract stated that Mr. West would pay $130,000.00 for the entire lot. Testerman testified that, although she had a written contract to sell the entire lot, West and Testerman had made an oral agreement to sell back a portion of the property, approximately 60 feet, for an undisclosed price. Mrs. Testerman stated that no agreement had been reached on the purchase price for the 60 feet.

The trial court's memorandum opinion states that the cause of action for intentional interference with business relations was dismissed for the following reasons:

We have already indicated in comment to counsel, and we conclude, that the claim for interference with her business rights, or contracts, with third parties, is not convincing under the evidence. The contract with the Wests, was for one hundred and thirty thousand dollars, and included all of the lot. There is oral testimony that Janet Testerman would actually retain some sixty feet of the lot sold to the Wests, but that is not provided for in the description of the property sold. She testified that she would have taken a conveyance back, but was very vague in her testimony on what the price of the reconveyance would be. The West deposition talks about her purchase back of property, without clear explaination [sic] of the terms, or price. There's no written provision as far [as] we can see in the contract of sale for removal of the wall, although that appears to have been an oral understanding between Janet Testerman and the Wests, and was the basis for the West contract being set aside.

There was no down payment on the contract, no specific closing time, and there is an indication that the Wests are still interested in the property. We are just not convinced of a showing, or adequate showing, of damages, or interference with business under all of the circumstances that would justify any recovery for interference with business.

Rule 13(d) of the Tennessee Rules of Appellate Procedure provides that review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of a finding, unless the preponderance of the evidence is otherwise. Based on the above evidence, the Chancellor found that the fair market value of the property was established at $130,000.00, that Testerman had contracted with West to sell the land for $130,000.00 and therefore Testerman suffered no damages based on interference with contractual relations or intentional interference with contract. Our review of the record persuades us that the evidence does not preponderate against the Chancellor's finding that Testerman failed to prove any damages since the property's fair market value was $130,000.00. As heretofore noted, the Chancellor further found that Testerman released West from the purchase agreement. Mr. West testified that, after conferring with either Testerman or her attorney as to the wording, he wrote Testerman that he was "withdrawing [his] offer" (although the contract had already been executed) and she testified that was agreeable with her and that she "let him out of this contract." We find no evidence that Testerman reserved her right of action for breach against West, if in fact such right still existed. *See Swift v. Beaty*, 39 Tenn.App. 292, 282 S.W.2d 655 (1954). However, appellant's brief does not contest the Chancellor's finding that Testerman released West from their contract.

As shown below, the Chancellor found an absence of malice on the part of the defendant. Malice or ill will must be established in order to recover for tortious interference with another's business.

*Lann v. Third Nat. Bank in Nashville,* 198 Tenn. 70, 277 S.W.2d 439 (1955). Malice is also a necessary element to an action for common law and statutory inducement to breach. *TSC Industries, Inc. v. Tomlin,* 743 S.W.2d at 173. Thus, appellant's first two issues are without merit.

The final issue is whether the trial court committed reversible error in refusing to assess punitive damages against the Tragessers for trespass. Her complaint alleged that the trespass was intentional, malicious and continuing and requested punitive damages. In denying Testerman's request for punitive damages the Chancellor stated:

> THE COURT: I don't think it was malicious. I think that he was on there, and they were trying to reach an agreement as to an amount, and they came pretty close, but not close enough, and I think he, from his viewpoint, was acting in good faith. He testified that if he'd known how much he was going to be asked, he would never have done it in the first place, and that's sort of a fall to both parties, so I don't see anything malicious.

In *Whittington v. Grand Valley Lakes, Inc.,* 547 S.W.2d 241 (Tenn.1977), the Supreme Court allowed punitive damages for the knowing, willful and deliberate disregard of the plaintiff's property rights where the defendants had removed top soil from the plaintiff's property. The defendants insisted that his trespass was unintentional without knowledge of the plaintiff's ownership; however, there was evidence that, notwithstanding the plaintiff's protestations, the defendant had continued to remove top soil to a depth of up to two feet. The Supreme Court held that punitive damages would be allowed where the defendant's acts were in "knowing, wilful and deliberate disregard of [plaintiff's] property rights." 547 S.W.2d at 243. *Whittington* further states, "It is established law that an award of punitive damages lies within the discretion of the trier of facts. The jury did not abuse its discretion in this case." 547 S.W.2d at 243 (citations omitted). In *Bryson v. Bramlett,* 204

Tenn. 347, 321 S.W.2d 555 (1958), the Supreme Court held that the award of punitive damages was within the discretion of the Chancellor, who was the trier of facts. The Chancellor awarded actual and punitive damages to the complainant, and the Court of Appeals reversed the judgment as to punitive damages. The Supreme Court modified the opinion of the Court of Appeals and reinstated the punitive damages as fixed by the Chancellor's discretion.

Our review of the record in this case does not show that the Chancellor's refusal to award Testerman punitive damages was an abuse of discretion.

The judgment of the trial court is affirmed. Costs of this appeal are taxed against the appellant for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.