OVERLAND INDUSTRIAL                    )
LUBRICANT CORPORATION,                 )
d/b/a ASCO SANITATION,                 )
                                       )
      Plaintiff/Appellant,             )
                                       )       Appeal No.
                                       )       01-A-01-9412-CH-00602
VS.                                    )
                                       )       Wayne Chancery
                                       )       No. 8844
CITY OF WAYNESBORO, CITY OF            )
COLLINWOOD, CITY OF CLIFTON,           )
AND HOUSEHOLD AND                      )
COMMERCIAL GARBAGE, INC.,              )
                                       )
      Defendants/Appellees.            )

**FILED**

**February 7, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF WAYNE COUNTY
AT WAYNESBORO, TENNESSEE

THE HONORABLE JIM T. HAMILTON, JUDGE


W. ANDREW YARBROUGH
424 Highway 64 East
P. O. Box 456
Waynesboro, Tennessee 38485
      Attorney for Plaintiff/Appellant

GEORGE G. GRAY
JAMES Y. ROSS
P. O. Box 246
Waynesboro, Tennessee  38485
      Attorneys for Defendants/Appellees
      Cities of Waynesboro, Collinwood and Clifton

RANDY HILLHOUSE
P. O. Box 787
Lawrenceburg, Tennessee  38464
      Attorney for Defendant/Appellee
      Household and Commercial Garbage, Inc.


AFFIRMED AND REMANDED


PER CURIAM

# **O P I N I O N**

This is a dispute over a contract to provide garbage and industrial waste collection in three Wayne County cities. The contractor sued the three cities for failing to prevent a rival contractor from providing the same services to some residents of each city and sued the rival contractor for inducing a breach of contract, for misrepresentation, and for interference with business relations. After a bench trial the Chancery Court of Wayne County dismissed the complaint. We affirm.

## I.

On February 2, 1990 the cities of Waynesboro, Collinwood and Clifton entered into a contract with ASCO Sanitation to pick up garbage and non-hazardous solid waste within the corporate limits of each city. The dispute in this case concerns the interpretation of three of the contract provisions:

ARTICLE I - SCOPE OF CONTRACT

    A.    The work to be done consists of furnishing all plant, labor, tools, vehicles, equipment, materials and personnel to perform all work and services necessary to satisfactorily collect all non-hazardous residential, commercial and/or industrial solid waste within the corporate limits of the City, and to transport and dispose of same to an approved disposal site specified by the city in strict accordance with the terms and provisions of this contract.

    B.    The work shall begin on the 2nd day of February, 1990, and shall be completed on the 2nd day of February, 1993, unless terminated sooner in accordance with the terms of this contract.

    C.    In the performance of this contract, the Contractor binds himself to the City to comply fully with all provisions, undertakings, and obligations hereinafter set forth.

\*   \*   \*

ARTICLE V - COLLECTION AND PAYMENT FOR AND TO CONTRACTOR

A.    If requested by the contractor, the City will agree to provide for the billing and collection of the monthly solid waste collection and disposal fees on behalf of the Contractor, in conjunction with its own monthly utility billing system. The Contractor shall be responsible for providing the City with all pertinent data on customers, charges and fees, to include all monthly charges. The City shall pay to the Contractor, all such charges and fees collected on his behalf.

B.    The Contractor agrees to reimburse the City the actual expenses involved in the billing and collecting process. This service charge shall be negotiated with the Contract and shall be deducted from the gross monthly collections prior to payment of the same to the Contractor.

\* \* \*

ARTICLE XXVI - CONTRACT NOT A FRANCHISE

It is the understanding and intention of the parties hereto that this agreement shall constitute a contract for the collection and disposal of residential, business, commercial and/or industrial non-hazardous solid wastes, and that such contract does not constitute a franchise; nor shall it be deemed or construed as such.

Household and Commercial Garbage, Inc. was an unsuccessful bidder on the work covered by ASCO's contract. At about the same time, however, Household secured a franchise to provide the same services for the county. Under that contract Household picked up garbage at the county jail, some schools, and other county facilities -- even though the facilities were within the three cities under contract with ASCO. In addition, Household serviced some commercial establishments inside the three cities. The record does not clearly show how actively Household solicited the commercial business. It is clear that some of Household's business customers sought them out because they were dissatisfied with ASCO's service.

ASCO's representatives complained to the Waynesboro City Commission and received a sympathetic ear, but the Commission was uncertain whether it could legally grant an exclusive right to collect garbage within the city. The Commission sought and received conflicting answers to its question from the University of Tennessee's Municipal Technical Advisory Service. Consequently, it was

not until 1992 that Waynesboro passed an ordinance providing a mandatory garbage collection service for the inhabitants of the city. The city of Collinwood passed such an ordinance early in 1990.

Collinwood and Waynesboro did, however, cite Household on numerous occasions for violating a city ordinance. In Collinwood's case the citation was based on the 1990 ordinance, providing that no one could collect or dispose of garbage except in accordance with the ordinance. The Waynesboro ordinance was a general ordinance, and provided that all refuse within the city was to be collected under the supervision of the city manager's designee. In each case Household paid the fine, although it fought the Collinwood convictions on the ground that the grant of an exclusive right to ASCO violated the Constitution.

## II.

ASCO contends that the cities had a duty to see that ASCO had no competition in the performance of the contract. In taking this position ASCO assumes that the contract gave it the exclusive right to handle garbage within the city. While that interpretation of the contract is not free of doubt, we assume for the purpose of this argument that ASCO is correct.

ASCO, however, does not cite any part of the contract or any principle of law that makes the cities guarantors of the contract or places on them the duty to prevent interference with ASCO's contract rights. Ordinarily, the one having a contract right should take steps to protect it. We do not think the record supports a conclusion that the cities breached their agreement with ASCO.

## III.

ASCO also sued Household for intentional or negligent misrepresentations to customers in the cities, that Household had the authority to pick up their garbage. In effect, these allegations state a cause of action for fraud or deceit. But, since the alleged misrepresentations were not made to ASCO and they did not rely on the misrepresentations to their detriment, a recovery could not be based on this theory. See *Brungard v. Caprice Records*, 608 S.W.2d 585 (Tenn. App. 1980).

## IV.

The remaining charges against Household involve (1) malicious interference with business relationship and (2) inducement of breach of contract. See Tenn. Code Ann. § 40-50-109. Since ASCO did not have a contract with any of the individual inhabitants or the business entities in the cities, and we have held that the cities did not breach their contract with ASCO, an action for inducing a breach cannot be established on this record.

The tort of interference with business relations is of uncertain validity in Tennessee. While the Supreme Court in *Hutton v. Watters*, 132 Tenn. 527, 179 S.W. 134 (1915), recognized a tort for intentional interference with business relations, the court in the recent case of *Quality Auto Parts v. Bluff City Buick*, 876 S.W.2d 818 (Tenn 1994), distinguished *Hutton v. Watters* and said that the tort of intentional interference with prospective economic advantage has never been expressly recognized in this state. It is possible that there are two separate torts, but we think they seek to accomplish the same purpose: redress for the harm caused by interference with one's business.

In *Lann v. Third National Bank*, 198 Tenn. 70, 277 S.W.2d 439 (1955), the Supreme Court recognized that "one's business is entitled to protection from

tortious interference by a third person who, in interfering therewith, is not acting in the exercise of some rights, such as the right to compete in business." 198 Tenn. at 72, 277 S.W.2d at 440 (quoting from 9 A.L.R.2d 232). The Court further recognized, however, that an essential element of the tort is malice. See also *Testerman v. Tragesser*, 789 S.W.2d 553 (Tenn. App. 1989). Thus, if the tort of interference with business relations is viable in Tennessee the plaintiff must also prove that the defendant acted maliciously and in the absence of some right of his own.

The trial judge held that Household did not act with malice in supplying services within the three cities that ASCO arguably held the exclusive right to supply. We agree. ASCO's exclusive right to collect the garbage within the cities was (and still may be) a matter of conjecture. Household had a reasonable doubt that the cities could grant an exclusive right, a doubt shared by the Municipal Technical Advisory Service. It defended the first citations issued against it on the ground that ASCO's "exclusive" contract was unconstitutional. Household also had a contract to provide garbage collection services for the county. A natural conclusion could be drawn that Household could legally pick up the garbage at the county facilities within the cities. When it also serviced business entities in the city it was advancing a perceived right to compete and was not acting with malice.

The judgment of the trial court is affirmed and the cause is remanded to the Chancery Court of Wayne County for any further proceedings necessary. Tax the costs on appeal to the appellant.

PER CURIAM