# GEORGE BUSBY FORD, INC., Complainant-Appellant, v. BILLY ROSS, Defendant-Appellee.
## — 459 S.W.2d 46.

Middle Section.  March 26, 1970.

Certiorari Denied by Supreme Court October 19, 1970.

John C. Tune, Jr., Nashville, for complainant-appellant.

William A. Parsons, Nashville, for defendant-appellee.

PURYEAR, J. On August 18, 1967, the complainant filed its original bill against Billy Ross and B. B. Doubleday. Jr., d/b/a King of the Road Camping Center, as defendants, alleging that complainant was engaged in the business of selling products of Ford Motor Company and that the defendants were engaged in the business of selling campers and trailers; that by agreement between complainant and defendants, complainant had, on several occasions, furnished defendants with new Ford pickup trucks upon which defendant could display their campers and that, also, occasionally, when the defendant would sell a camper, they would also ask permission of complainant to sell the truck upon which such camper was displayed.

In said bill, complainant further alleged that on May 5, 1967, one of said trucks was sold to Charles L. Constant for the total sum of $2,958.45, which sale price was collected by defendants but not paid over to complainant by said defendants.

Said original bill prays for proper process and for a decree in favor of complainant in the amount of $2,958.45, plus interest, and for general relief.

On September 26, 1967, the defendants Ross and Doubleday, each filed separate answers to said original bill, and Doubleday averred in his answer that he was not a partner of Ross on May 5, 1967, but that said partnership between himself and Ross was formed after that date.

Thereafter, on October 31, 1968, complainant filed an amended and supplemental bill making one Joel (Jack) Johnson an additional defendant to the suit, alleging in said bill that Ross and Johnson perpetrated a fraud upon complainant by collecting the proceeds of the sale of complainant's truck and converting said proceeds to the use and benefit of the defendant, Johnson.

It is also alleged in said amended and supplemental bill that Ross and Johnson misinformed complainant about the proceeds of said sale having been paid by the purchaser, Constant.

Thereafter, complainant learned that, in truth, Doubleday was not involved in the transaction by which said truck was sold and the proceeds thereof collected by Ross and Johnson and the suit was then voluntarily dismissed as to Doubleday. Service of process was never had upon Johnson and therefore, the complainant also dismissed its suit against him.

On December 16, 1968, the defendant, Ross, filed an answer to the amended and supplemental bill in which he denied the allegations of fraud alleged in said amended and supplemental bill and then on May 15, 1969, Ross filed

a plea of bankruptcy averring that on the 16th day of January, 1968, he was duly adjudged as bankrupt by the United States District Court for the Middle District of Tennessee, Nashville Division, and that he was thereby released from payment of the debt sued on in this case, and that the bankruptcy cause was still pending in the United States District Court, wherein the defendent Ross was seeking a discharge of said debt.

The case was tried before the Chancellor, as a result of which trial the following decree was entered:

## "DECREE

This cause was heard upon the entire record, testimony of witnesses in open court and argument of counsel, from all of which the Court, having found the facts at the conclusion of the hearing, is of the opinion that the relationship between the complainant and the defendant Ross was that of bailor and bailee, and further that the defendant breached the duty he owed the complainant in not accounting to the complainant for the sum of $2,958.45 for the sale price of the Ford truck placed with him for sale.

IT IS, THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the complainant have and recover of the defendant Billy Ross $2,958.45 with interest from May 9, 1967, to-wit: $387.98, making a total of $3,346.43, and also the costs of the cause.

However, it appears to the Court that the defendant has filed a plea of bankruptcy which the Court sustains, the complainant having failed to prove that the defendant was guilty of fraud and misrepresentation in obtaining the property from the complainant, and,

therefore, the debt which is due by said defendant to complainant is a liability which is dischargeable in bankruptcy, which is accordingly so ORDERED, ADJUDGED AND DECREED BY THE COURT." (Tech.Rec. p. 31)

From the aforesaid decree, the complainant has prayed and perfected its appeal to this Court and filed three assignments of error, the general thrust of which is to assert that the evidence preponderates against the decree of the trial Court.

The case comes to us for review de novo upon the record, pursuant to T.C.A. 27-303, accompanied by the usual presumption that the decree of the trial Court is correct unless the preponderance of evidence is otherwise.

Pursuant to the aforesaid Code Section, we have reviewed the entire record in the case and concluded that we must respectfully disagree with the result reached by the trial Court, because the evidence preponderates against said decree.

The evidence heard in the case consisted of oral testimony and certain exhibits. The witnesses who testified in the case consisted of George Busby, Charles L. Constant, John Randall Whitney, and the defendant, Billy Ross, together with certain portions of the discovery deposition of said defendant, which portions of his discovery deposition were introduced and read into the record at the trial.

The relevant facts of the case, appearing from the evidence, can be briefly stated as follows:

At some time during the month of April, 1967, the defendant and one Joel (Jack) Johnson came to complain-

ant's principal place of business at 18th and Church Street in Nashville, Tennessee, and told complainant's truck manager, Randall Whitney, that they were selling "campers" and would like to display some of these campers on some of complainant's pickup trucks.

At that time, the defendant Ross, was doing business as King of the Road Camping Center, engaged in selling mobile homes and campers, the latter of which is a small mobile home designed for mounting on a pickup truck and to be used for camping trips.

These campers were being furnished by King of the Road Camper Company of Pinellas Park, Florida, of which latter company Johnson was supposed to be a one-third owner.

At the time of the initial contact made by defendant with complainant, Johnson was in Nashville, pursuant to some kind of arrangement with the defendant, Ross, by which Johnson was helping to promote the sales of campers being furnished by his company to the defendant.

Also, at that time, Johnson's company in Florida was holding an uncashed check signed by the defendant until some arrangement could be made for Ross to "floor plan" the financing of campers which were being consigned to him by the Florida Company. However, the record does not disclose the amount of this uncashed check which was being held by Johnson's company.

Complainant's truck manager, Randall Whitney, agreed to let defendant display some of these campers on complainant's trucks upon the defendant's lot, believing that such display would aid in selling some

trucks. Also, complainant's truck manager agreed that complainant would sell these displayed trucks at a price of $100.00 above its cost for each truck.

Initially three of complainant's trucks were placed upon defendant's lot for display purposes and eventual sale and, prior to May 5, 1967, all three of them were sold by this method and those three sales were financed through arrangements made by complainant.

On or about May 5, 1967, Johnson called complainant's truck manager and said that Mr. Constant desired to purchase one of complainant's trucks but wanted an extra bumper placed on it, which bumper the complainant agreed to install for a certain agreed price. In order to consummate this sale, complainant sent one of its salesmen, Mr. Cailloette, to the defendant's sales lot for the purpose of transferring title to the purchaser, Mr. Constant.

This particular purchaser desired to expedite the transfer of title and licensing of the truck because he was purchasing it for the use of his son, who planned to do some research work in Mexico, and the issuance of title and license needed to be expedited in order that the truck, with camper mounted thereon, might be permitted to cross the border into Mexico with as little delay as possible.

Instead of this truck being sold for $100.00 above complainant's cost, it was sold for $50.00 above said cost and the total amount of sale price, including tax, was $2,958.45.

This sale was finally consummated on May 9, 1967, on which date, the defendant also sold Constant a camper

to be mounted upon said truck and the total price of the combined truck and camper was $5,358.48.

For said amount of $5,358.48, Mr. Constant issued his check. The entire transaction was made upon the premises of the defendant and he was present at the time. Prior to writing the check, Mr. Constant inquired of Ross and Johnson as to whether he was to issue one check to complainant for the truck and another to the defendant for the camper, in response to which Johnson said "well, we haven't decided yet."

Shortly thereafter, but on the same day, Johnson instructed him to make one check in the entire amount of $5,358.48, so the check was issued by Constant for that amount and the name of the payee was left blank and the check was delivered to Johnson.

Complainant's salesman. Mr. Cailloette, was present on defendant's lot during this transaction and the defendant was also present.

The record is not clear as to whether the check was issued on May 10th or May 9th but it was dated May 9th. Anyhow, on May 10, 1967, Ross carried Johnson to the Charlotte Avenue Branch of Third National Bank in Nashville, Tennessee, where Johnson exchanged Constant's check, which was drawn upon that bank, for a cashier's check issued by said bank payable to Johnson for $5,358.48, but no part of this amount was ever paid to complainant.

A photostatic copy of Constant's cancelled check is filed as an exhibit and Johnson's name appears therein as sole payee, but the evidence. does not show when his name was inserted therein.

In the trial Court, the defendant insisted, and he also insists upon this appeal, that the obligation of $2,958.48 due complainant was discharged pursuant to filing of a bankruptcy petition by said defendant and adjudication in bankruptcy on January 16, 1968, as alleged in his plea of bankruptcy.

On the other hand, complainant insisted at the trial, and insists here upon this appeal, that the obligation upon which this suit is predicated is one of those classes of obligations from which a discharge in bankruptcy does not release a bankrupt, especially relying upon sub-section (a) (4) of Section 35, Title 11, U.S.Code Annotated, which excludes from a discharge in bankruptcy such debts of a bankrupt as ''were created by his fraud, embezzlement, misappropriation or defalcation while acting an an officer or in any fiduciary capacity.''

We are convinced that the evidence preponderates in favor of the complainant's contention that the defendant perpetrated a fraud upon complainant, as a result of which complainant lost the sum of $2,958.48, same being the proceeds of sale of its truck.

The evidence conclusively establishes the fact that a bailor-bailee relationship was created when the complainant agreed to allow defendant to display some of its trucks for the purpose of promoting the sale of complete outfits consisting of trucks with campers mounted thereon.

''Fraud'' has been defined in several Tennessee cases, but, perhaps, the best definition thereof is found in the early case of Belcher v. Belcher (1836), 18 Tenn. 121, 10 Yerg. 121, wherein it is defined as follows:

"Fraud, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of either legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another." Supra, pp. 130-131.

We think fraud has been proved in this case by a well linked chain of circumstances and it has been held that such may be proved by circumstantial evidence. Parrott v. Parrott (1870), 48 Tenn. 681, 1 Heisk. 681.

The evidence does not clearly establish whether Johnson was a partner of Ross or simply a salesman for him, but it matters not which he was, because in either event, Ross must suffer the consequences of the acts committed by Johnson while acting within the scope of whatever authority had been delegated to him by Ross.

This question was settled by the Supreme Court in Griffin v. Bergeda (1925), 152 Tenn. 512, 279 S.W. 385. In that case, the plaintiff purchased a diamond ring from the defendants, Aaron Bergeda and David Bergeda, who were partners in the jewelry business.

After she had paid for the ring, she discovered, upon examination by an expert, that it was materially defective, and she thereupon demanded a recission, and, this being refused, brought suit to recover the purchase price, alleging in her declaration, as amended, that the purchase money was obtained from her by false pretenses and false representations of the defendants, acting knowingly, deceitfully, and fraudulently. The defendants, as partners and individually, were thrown into bankruptcy and subsequently obtained their discharge. A plea of discharge in bankruptcy was interposed in the suit, which

plea was demurred to as insufficient, in that it failed to show that a discharge in bankruptcy operates to bar a claim for money obtained by false pretenses and representations, as the declaration charged in the case.

The appeal in that case was from a judgment of the trial Court sustaining the plea of discharge and holding that the debt sued on was dischargeable in bankruptcy.

The reasoning in that case, which applies to the instant case, is set forth in the opinion as follows:

"It is also insisted for defendant Aaron Bergeda that the declaration charges his partner, David Bergeda, only, with the fraudulent conduct, and that this fraud cannot be imputed to Aaron Bergeda, the other member of the partnership, and that therefore the discharge granted him may properly be pleaded in bar of the suit against him. It is held that a false representation by one partner, by means of which property was obtained by the partnership, will, in law, be imputed to the other partners to the extent of holding them civilly liable for the debt, and their discharge in bankruptcy will not discharge their liability as to such debt. Frank v. Michigan Paper Co., 179 F. [776] 779, 103 C.C.A. 268, 30 L.R.A., (N.S.) 623 (4th Cir.). And in McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205, it is held that partners are individually responsible for torts by the firm, when acting within the general scope of the business, whether they personally participate therein or not, and that the unauthorized sale by a firm of brokers of certificates of stock held by the firm as collateral, and the appropriation of the proceeds to the firm's use, is a 'willful and malicious injury to property,' within the meaning of section 17, subsec-

tion 2, of the Bankruptcy Act, as amended in 1903. And money is 'property.' In re Louisville Nat. Banking Co., 158 F. 403, 85 C.C.A. 513.

It results that the judgment of the trial court must be reversed and the case remanded.'' Supra, pp. 516, 517, 279 S.W. pp. 386-387.

Defendant contends that he had nothing whatever to do with the transaction in question and it was handled entirely by Cailloette and Johnson but this contention is completely overwhelmed by the following facts conclusively established by the evidence:

(1) The defendant was physically present during and in the midst of the entire transaction, and by his silence and slightly more than passive cooperation, he participated therein; (2) the defendant actually carried Johnson to the Charlotte Avenue Branch of Third National Bank, well knowing that Johnson had in his possession, at that time, the check which had been delivered to him by Constant and; (3) after Constant had paid for the truck and camper, the defendant told a representative of complainant that the purchase price had not been paid and he waited for approximately two weeks after payment had been made to disclose this fact to complainant, thereby wilfully concealing the fact of such payment from complainant.

Moreover, the evidence convinces us that the defendant fraudulently breached a trust relationship between himself and complainant. A fraudulent breach of trust has been declared to be a criminal offense in this State and such offense is defined in Section 39-4226, T.C.A., which is as follows:

"39-4226. *'Fraudulent breach of trust' defined.*—The fraudulent appropriation of personal property or money by any one to whom it has been delivered on deposit, pledge, sequestration, or to be carried or repaired, or in whose hands or under whose control it may be by his position as clerk, agent, factor, or bailee, or on any other contract or trust by which he was bound to deliver or return the thing received or its proceeds, is a fraudulent breach of trust. So is the fraudulent appropriation of certain specific property by any one to whom it has been delivered on a contract of loan for use, or of letting and hiring, after the time at which, according to the contract, the right of use acquired thereby has ceased, or before that time, by a disposition not authorized by the contract."

Although the evidence in this case falls short of that which would be required to sustain a criminal conviction for the offense denounced in the foregoing statute, because a greater quantum of proof is required to convict of a criminal offense than is required to prove a private wrong, but the defendant's breach of said statute is established in this case by a clear preponderance of the evidence.

In the early case of Blanton & James v. Hearn, 3 Tenn. Cas. 326 (1875), the Supreme Court held that a factor or commission merchant who converts to his own use the goods consigned to him for sale on commission, or appropriates the proceeds of such goods, does not thereby become such a fiduciary debtor, within the meaning of the Bankruptcy Act so as to prevent discharge from same in bankruptcy.

However, the reasoning of the Supreme Court in that case is not applicable to the case at bar, since the de-

fendant's relationship to the complainant was not that of a factor or commission merchant and there are some very sound reasons for making a distinction between the relationship which existed in the Blanton and James case and that which exists in the case at bar.

For the reasons herein indicated, the decree of the Chancellor is reversed and a decree will be entered in this Court overruling the defendant's plea of bankruptcy and awarding complainant a recovery in the sum of $2,958.45, together with costs of the lower Court, costs of this appeal, and interest at six percent from May 10, 1967.

Shriver, P. J. (M.S.), and Todd, J., concur.