**In re J. Gregg SIKES, Debtor.**

**BANCBOSTON MORTGAGE CORP., Plaintiff,**

v.

**Thomas E. LEDFORD and J. Gregg Sikes, Defendants.**

**Bankruptcy No. 389–00645.**
**Adv. Nos. 389–0154A, 389–0155A.**

United States Bankruptcy Court, M.D. Tennessee.

July 14, 1995.

---

Paul S. Davidson, D. Reed Houk, Stokes & Bartholomew, P.A., Nashville, TN, for Banc-Boston Mortg. Corp.

Paul E. Jennings, Jennings, Lane & Ramer, Nashville, TN, for J. Gregg Sikes.

## MEMORANDUM

KEITH M. LUNDIN, United States Bankruptcy Judge.

BancBoston's motion for summary judgment to fix "the dollar amount of the nondischargeable judgment to be entered against Defendant ... Sikes" raises two issues: (1) Whether the reversal on appeal of this court's dismissal of the complaint against Sikes at the close of the bank's proof under (former) FED.R.CIV.P. 41(b) precludes Sikes

744

from presenting defenses to the bank's complaint?; and (2) Whether the amount of any nondischargeable judgment to which the bank may be entitled is limited by the contractual guaranty executed by the defendant? Sikes is entitled to a trial of his defenses to the bank's complaint. BancBoston is entitled to summary judgment with respect to the amount of its damages. The following are findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

## I.

In 1986 J. Gregg Sikes and Thomas Ledford were the general partners in Montclair, Ltd. Sikes was a "silent partner," Ledford managed the venture. The partnership constructed an upscale condominium community in Nashville, Tennessee. BancBoston financed acquisition of the land and construction of the units. The construction loan was nonrecourse, but Sikes and Ledford executed personal guarantees to the extent of $1.1 million.

Release of the bulk of the construction funds was conditioned on procurement of 14 noncontingent "presale" contracts for condominium units. By December 1986, Ledford presented to BancBoston the requisite number of presale contracts. Ledford did not disclose that many of the contracts had financing or other secret contingencies that violated the terms of the construction loan.

The Montclair project did not sell well and the partnership filed Chapter 11 in 1988. Ledford filed Chapter 7 later that year. Sikes filed Chapter 11 on January 30, 1989. BancBoston timely filed nondischargeability complaints against Sikes and Ledford under 11 U.S.C. § 523(a)(2)(A) (1988, as amended).[1] BancBoston alleged that Ledford made false representations with respect to the presale contracts. BancBoston alleged that Sikes was guilty by association.

The proceedings were tried together. At the close of plaintiff's proof, this court dismissed the complaint against Sikes pursuant to FED.R.BANKR.P. 7041(b)[2] because BancBoston offered no evidence that Sikes knew of or participated in Ledford's misconduct. This court held that the fraud of one partner could not be imputed to another for the purpose of nondischargeability under § 523(a)(2)(A).

Trial was completed as to Ledford only. Ledford was found to have made misrepresentations and to have acted under false pretenses to secure release of the construction funds. BancBoston demonstrated that its damages exceeded $2 million; BancBoston was directed to make an accounting of its claim.[3]

---

1. Section 523(a)(2)(A) excepts from discharge any debt "for money, property services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, ...."

2. Incorporating FED.R.CIV.P. 41, FED.R.BANKR.P. 7041(b) provided at the time of this trial:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

In 1991, after this trial, FED.R.CIV.P. 52(c) was amended to replace the part of Rule 41(b) reproduced above.

3. On the issue of damages, the court observed:

Damages in this case have to be measured against the original contract between the parties and whatever funds were advanced for construction of this project, whatever funds were used for the project, whatever funds were put in to complete the project to get the property ready for sale, to actually sell it, the expenses of selling it, everything, in fact, that BancBoston is entitled to fully recover those damages in this Court. On the other hand, the debtor is entitled to offset against the claim those amounts received by BancBoston from letters of credit, the sale of condominium units, funds realized at the auction sale of this property, plus the income from the property, if there was any, while BancBoston was trying to sell the property, and the remainder value of the life estate of the Sonnenfield property adjacent to The Montclair previously owned by Montclair and foreclosed and now owned by

Ledford and BancBoston appealed. The district court affirmed as to Ledford, but reversed as to Sikes. *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 127 B.R. 175 (M.D.Tenn.1991). The district court ordered that the "holding that Sikes' debt to BBMC is dischargeable, is reversed." *Id.* at 185.

Sikes and Ledford appealed. The United States Court of Appeals for the Sixth Circuit affirmed. *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556 (6th Cir.1992). The Supreme Court denied Sikes' petition for writ of certiorari. *Sikes v. Banc-Boston Mortgage Corp.*, —— U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993).

BancBoston now moves for summary judgment with respect to "the dollar amount" of its "nondischargeable judgment" against Sikes. BancBoston offers an accounting that reflects $5,171,714.14 outstanding on the Montclair loan. Sikes does not dispute that accounting.

Sikes raises two objections to summary judgment. First, Sikes asserts that the disposition on appeal of his liability to Banc-Boston compromised his right to due process because he has never been permitted to present evidence in his defense. Second, Sikes argues that the amount of any nondischargeable judgment is limited by his guaranty to $1.1 million.

## II.

■ When a federal trial court enters a judgment of dismissal at the close of the plaintiff's proof under FED.R.CIV.P. 41(b) and that dismissal is reversed on appeal, the underlying claim must be remanded to the trial court for completion of trial with respect to the defendant's case. *White v. Rimrock Tidelands, Inc.*, 414 F.2d 1336, 1340 (5th Cir.1969) ("[T]he District Court's decision to grant the [FED.R.CIV.P.] 41(b) motion to dismiss must be reversed. Because the dismissal under Rule 41(b) was made at the

close of the plaintiff's evidence, the action must be remanded for further proceedings to allow the defendant to present his case. . . .") (citations and footnote omitted); *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1503–04 (11th Cir.1993) ("Although a Rule 41(b) dismissal is similar to a directed verdict in favor of the defendant in a jury trail in that it involves an adjudication on the merits against the plaintiff at the close of the plaintiff's evidence, . . . it is treated for standard of proof purposes as if it were a final adjudication at the end of trial. . . . If this court reverses an order of involuntary dismissal, the case proceeds as if the district court had denied the motion for dismissal in the first place. . . . 'Although the defendants must of course be allowed to present their evidence, the district court need not compel [the plaintiff] to offer again the evidence it has already introduced. Nevertheless, plaintiff should be allowed to supplement the . . . record, in chief or by rebuttal, with any evidence that could properly have been admitted at the first trial of [the] issues.'") (citations omitted). *See also Mattivi v. South African Marine Corp.*, 618 F.2d 163 (2d Cir.1980) (when motion for a directed verdict is granted at the conclusion of the plaintiff's case, but reversed on appeal, an entire new trial must be held). *See generally* Connie Alt, Note: *Preservation of Judgment N.O.V. Motion under Rule 50(b): Renewal of Directed Verdict Motion,* 70 IOWA L.R. 269, 273 (1984) ("[If] the trial court granted the directed verdict at the close of the evidence, the only way to rectify the error on appeal would be grant a new trial.") (citations omitted).

■ The entry of judgment for Sikes pursuant to FED.R.CIV.P. 41(b) precluded Sikes from presenting any defense to the imputation of Ledford's liability under § 523(a)(2)(A). The bank's only theory of liability against Sikes was the imputation of

BancBoston. BancBoston offered evidence that its total claim is in excess of $2 million. . . . It is simply a matter of further accounting. . . .

*BancBoston Mortgage Corp. v. Ledford (In re Ledford),* Adv. No. 89–0154A, Memorandum at 24–6 (Bankr.M.D.Tenn. June 22, 1990).

At the time of this trial, the Sixth Circuit had not resolved the question whether it was appropriate for bankruptcy courts to enter final judgments as to damages in dischargeability litigation. That question has since been answered affirmatively. *See Longo v. McLaren (In re McLaren),* 3 F.3d 958, 965–66 (6th Cir.1993).

Ledford's misconduct. The dismissal at the close of the bank's proof was based entirely on this court's holding that imputed liability was not available as a matter of law in § 523(a)(2)(A) litigation. BancBoston would interpret the reversal of that holding on appeal as final adjudication of the nondischargeability of its claims against Sikes under § 523(a)(2)(A). To so read the appellate record would require this court to address Sikes' constitutional claim that he has been denied due process.[4]

▪ There are defenses to imputed liability. In its opinion on the appeal of this adversary proceeding, the Sixth Circuit mentioned these defenses to imputed liability: (1) that there was no partnership, in law or in equity; (2) that the culpable partner acted beyond the scope of the partnership or out of the ordinary course of the partnership's business; (3) that the culpable partner acted outside his or her authority; or (4) that the innocent partner received no benefit from the fruits of the fraudulent conduct. *See In re Ledford,* 970 F.2d at 1561–62 (citing *Strang v. Bradner* 114 U.S. 555, 561, 5 S.Ct. 1038, 1041, 29 L.Ed. 248 (1885)). *See also Courts of the Phoenix v. Charter Oak Fire Ins. Co.,* 560 F.Supp. 858, 862 (N.D.Ill.1983) (Applying Illinois law, "the wrongdoing of one partner [arson] not within the scope of his authority or in furtherance of partnership business, is not attributable to the other partners."); *Hogs Unlimited v. Farm Bureau Mutual Ins. Co.,* 401 N.W.2d 381, 386 (Minn.1987) (The poisoning of livestock was beyond a partner's authority under Minnesota law. Innocent partners entitled to pro rata share of insurance benefits.); *Brown v. Frankenmuth Mutual Ins. Co.,* 468 N.W.2d 243, 246 (Mich.Ct.App.1991) (Even if the court found existence of a partnership, intentional act of setting fire to property is not in the ordinary course of a partner's business.).

▪ Because the imputation of liability from Ledford to Sikes arose on appellate review of a dismissal under FED.R.CIV.P. 41(b), Sikes must be permitted to present his defenses to imputed liability. As the Fifth Circuit noted in *White v. Rimrock Tidelands, Inc.,* 414 F.2d 1336, 1340 (5th Cir.1969), in a trial to the court in which judgment of dismissal under Rule 41(b) is reversed on appeal, the trial court need not conduct an entirely new trial, but can take up where trial left off. Here, the only issues remaining for trial are Sikes' defenses to imputed liability.

### III.

▪ BancBoston's accounting reflects a balance due under the Montclair note of $5,171,714.14. Sikes concedes that Banc-Boston's accounting is correct. *See In re Sikes,* Case No. 89–00645, Agreed Order (Bankr.M.D.Tenn. Apr. 14, 1989). However, Sikes argues that his liability is limited by contract to his guaranty of $1.1 million.[5]

▪ The parties to a contract can agree to limit their liabilities in the event of breach. *See, e.g., Houghland v. Security Alarms & Servs., Inc.,* 755 S.W.2d 769, 773 (Tenn.1988) ("Limitations against liability for negligence or breach of contract have generally been upheld in this state...."). However, Tennessee, like most jurisdictions, does not permit disclaimers of liability or exculpatory clauses to excuse a party from fraud. *See Id.; First Nat'l Bank v. Brooks Farms,* 821

---

**4.** "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). Toward that end, "[d]ue process requires that there be an opportunity to present every available defense." *American Surety Co. v. Baldwin,* 287 U.S. 156, 168, 53 S.Ct. 98, 102, 77 L.Ed. 231 (1932). *See generally* James R. Pielemeier, *Due Process Limitations on the Application of Collateral Estoppel Against NonParties to Prior Litigation,* 63 BOSTON UNIV. L.R. 383, 415–16 (1983).

**5.** BancBoston's argument that Sikes waived this "defense" because it was not raised in his answer is disingenuous. The extent of any nondischargeable debt was stated as an issue in the pretrial order—"If any amount is determined nondischargeable, what is the amount of the debt that is nondischargeable?" *BancBoston Mortgage Corp. v. Ledford (In re Ledford),* Adv. No. 89–0154, Pretrial Order at 2 (Bankr.M.D.Tenn. Sept. 2, 1989). BancBoston took judgment against Sikes on his guaranty in separate litigation mentioned by the district court in the appeal of this adversary proceeding. *See In re Ledford,* 127 B.R. at 176–77. BancBoston can claim neither surprise nor prejudice that it must now respond to this "defense."

S.W.2d 925, 928 (Tenn.1991) ("[T]he law does not permit a covenant of immunity to be drawn that will protect a person against his own fraud; such a covenant is unenforceable because of public policy."). *See also Adams v. Roark,* 686 S.W.2d 73, 75 (Tenn.1985) (adopts § 195 of the Restatement of the Law 2d, Contracts, which precludes enforcement of contract terms that exempt a party from tort liability for harm caused intentionally or recklessly).

BancBoston was not limited to contract remedies. BancBoston could pursue an action in fraud, misrepresentation or deceit. *Vance v. Schulder,* 547 S.W.2d 927, 931 (Tenn.1977) (*quoting* 37 Am.Jur.2d, Fraud & Deceit § 332 at 439) (" 'Thus, a person who has been injured by the fraud ... [in] a transaction ... involving business or commercial dealings, may maintain an action at law in tort or recover damages for the injury received from the fraud and deceit.... The foundation of the action is not contract, but tort.' ").

 BancBoston alleged and proved tortious misconduct by Ledford.[6] If Ledford's fraud is properly imputed to his partner, Sikes is jointly and severally liable for the damages caused by Ledford. *See* Tenn. Code Ann. §§ 61–1–112 & 114 (Michie 1989 & Supp.1994); *Johnson v. King,* 221 Tenn. 292, 426 S.W.2d 196, 197–98 (1968); *Southgate v. Linton,* 181 Tenn. 540, 181 S.W.2d 888 (1944); *Griffin v. Bergeda,* 152 Tenn. 512, 279 S.W. 385, 386 (1926); *George Busby Ford, Inc. v. Ross,* 62 Tenn.App. 80, 459 S.W.2d 46, 50 (1970).

The ordinary measure of damages for fraud is:

[T]he injured party should be compensated for the actual injuries sustained by placing him or her in the same position that he or she would have occupied had the wrongdoer performed and the fraud not occurred.

*Blasingame v. American Materials, Inc.,* 654 S.W.2d 659, 665 (Tenn.1983) (citations omitted). *See also Jasper Aviation, Inc. v. McCollum Aviation, Inc.,* 497 S.W.2d 240 (Tenn.1972) (all pecuniary loss caused by justifiable reliance); *Garrett v. Mazda Motors of Am.,* 844 S.W.2d 178 (Tenn.Ct.App.1992) (all damages naturally and proximately resulting from the fraud); *Youngblood v. Wall,* 815 S.W.2d 512 (Tenn.Ct.App.1991).

Sikes's guaranty is not a limit on BancBoston's recovery for imputed fraud. There being no other material dispute with respect to damages, BancBoston is entitled to partial summary judgment.

An appropriate order will be entered.

### ORDER

For the reasons stated in the Memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that J. Gregg Sikes is entitled to completion of trial with respect to his defenses to imputed liability. BancBoston is entitled to summary judgment with respect to the amount of its damages.

IT IS SO ORDERED.

---

6. BancBoston proved that Ledford made a representation of an existing fact, that was false, that was material, that was made knowingly, that plaintiff relied on, and that caused plaintiff damages. Memorandum at 19–26. *See First Nat'l Bank v. Brooks Farms,* 821 S.W.2d at 927; *Edwards v. Travelers, Inc.,* 563 F.2d 105 (6th Cir. 1977) (fraud under Tennessee law). *See also Calhoun v. Baylor,* 646 F.2d 1158 (6th Cir.1981).